KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
Michael J. Kump (SBN 100983)
  mkump@kwikalaw.com
Jonathan P. Steinsapir (SBN 226281)
  jsteinsapir@kwikalaw.com
Gregory P. Korn (SBN 205306)
  gkorn@kwikalaw.com
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Telephone: 310.566.9800
Facsimile: 310.566.9850

Attorneys for All Named Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 2DIE4KOURT, a California corporation, KIMSAPRINCESS INC., a California corporation, KHLOMONEY INC., a California corporation, KOURTNEY KARDASHIAN, an individual, KIM KARDASHIAN WEST, an individual, and KHLOE KARDASHIAN, an individual, | Case No. 8:16-CV-001304 |
| | **COMPLAINT FOR INJUNCTIVE RELIEF FOR:** |
| Plaintiffs, | **(1) FEDERAL TRADEMARK INFRINGEMENT [15 U.S.C. § 1114];** |
| vs. | **(2) FALSE ASSOCIATION AND DESIGNATION OF ORIGIN [15 U.S.C. § 1125(a)];** |
| HILLAIR CAPITAL MANAGEMENT LLC, a Delaware Limited Liability Company; HILLAIR CAPITAL INVESTMENTS LP, a Cayman Islands Limited Partnership; and HAVEN BEAUTY INC., a Delaware corporation; NEAL KAUFMAN, an individual SEAN MCAVOY, an individual; and DOES 1 through 10, inclusive, | **(3) VIOLATION OF THE RIGHT OF PUBLICITY UNDER CALIFORNIA LAW; AND** |
| | **(4) CALIFORNIA COMMON LAW TRADEMARK INFRINGEMENT** |
| Defendants. | |

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

**INTRODUCTION**

1.     This is an action for injunctive relief under the Lanham Act and under California law. In the Licensing Agreement, dated May 9, 2012 (the "License Agreement"), Plaintiffs granted an exclusive five-year license to use their trademarks, names, likenesses and images for use in connection with the development and sale of color cosmetic products, *so long as* all such uses were first approved in writing by the Plaintiffs. When the original licensee encountered financial difficulties, Defendants took over the License Agreement in October 2014, and have been operating the business since then under the federally-registered trademark "Kardashian Beauty" owned by the Plaintiffs.

2.     When the Defendants breached the License Agreement by failing to make required payments and other breaches, Plaintiffs gave notice and an opportunity to cure, as required under the License Agreement. When the Defendants refused to cure, the Plaintiffs on July 8, 2016, terminated the License Agreement, effective immediately. Defendants are refusing to comply with the termination notice and are continuing to use Plaintiffs' trademarks, names, likenesses and images without authorization. Accordingly, Plaintiffs bring this action for injunctive relief to protect their rights in their valuable intellectual property.

**JURISDICTION AND VENUE**

3.     This is a civil action arising under federal law, the Lanham Act of 1946, 15 U.S.C. §§ 1051, et seq. This Court has original jurisdiction over the federal claims pursuant to 28 U.S.C. §§ 1331 and 1338(a). This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a), as those claims are so related to the federal claims that they form part of the same case or controversy.

4.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because: the entity Defendants "reside" in this judicial district for venue purposes under 28 U.S.C.§ 1391(c); a substantial part of the events or omissions giving rise to

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

Kinsella Weitzman Iser Kump & Aldisert llp
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

1  the claims occurred in this district; and a substantial part of property that is the

2  subject of the action is situated in this district.

3      5.      The claims in this action are subject to a mandatory JAMS arbitration

4  clause in a License Agreement, discussed below. However, as also discussed in

5  further detail below, that License Agreement specifically permits parties to seek

6  injunctive relief in a court of competent jurisdiction. This action seeks only

7  injunctive relief; all claims for money damages based on the conduct below will be

8  sought in a pending JAMS arbitration. To the extent any claims are later determined

9  not to be arbitrable, or any parties are not subject to the arbitration agreement,

10  Plaintiffs reserve their right to seek money damages by amending the complaint

11  herein. To be clear, the filing of this action for injunctive relief only, is not a waiver

12  of Plaintiffs' right to arbitrate all money damage claims involving the conduct

13  alleged herein, and should not be construed to be such a waiver.

14                              **PARTIES**

15      6.      Plaintiff 2Die4Kourt is a corporation organized and existing under the

16  laws of the State of California, with its principal place of business located in Los

17  Angeles County, California. At all relevant times, 2Die4Kourt was and is a "loan-

18  out" company for Plaintiff Kourtney Kardashian ("Kourtney"), through which

19  Kourtney provides certain personal services. Kourtney is a citizen of California and

20  resides in this judicial district. 2Die4Kourt has the right to enforce various rights of

21  Kourtney, including Kourtney's rights to publicity and Kourtney's common law and

22  federal trademark rights. 2Die4Kourt is also the registrant of several federally

23  registered trademarks associated with Kourtney.

24      7.      Plaintiff Kimsaprincess Inc. is a corporation organized and existing

25  under the laws of the State of California, with its principal place of business located

26  in Los Angeles County, California. At all relevant times, Kimsaprincess Inc. was

27  and is a "loan-out" company for Plaintiff Kim Kardashian West ("Kim"), through

28  which Kim provides certain personal services. Kim is a citizen of California and

1  resides in this judicial district. Kimsaprincess has the right to enforce various rights

2  of Kim, including Kim's rights to publicity and Kim's common law and federal

3  trademark rights. Kimsaprincess is also the registrant of several federally registered

4  trademarks associated with Kim.

5      8.    Plaintiff Khlomoney Inc. is a corporation organized and existing under

6  the laws of the State of California, with its principal place of business located in Los

7  Angeles County, California. At all relevant times, Khlomoney Inc. was and is a

8  "loan-out" company for Plaintiff Khloe Kardashian ("Khloe"), through which Khloe

9  provides certain personal services. Khloe is a citizen of California and resides in this

10 judicial district. Khlomoney has the right to enforce various rights of Khloe,

11 including Khloe's rights to publicity and Khloe's common law and federal

12 trademark rights. Khlomoney is also the registrant of several federally registered

13 trademarks associated with Khloe.

14     9.    Except where otherwise noted, "the Kardashians" refers to all

15 Plaintiffs, and "the Kardashian Corporations" refer to the corporate Plaintiffs,

16 2Die4Kourt, Kimsaprincess Inc., and Khlomoney Inc.

17     10.   Defendant Hillair Capital Management LLC ("HCM") is a limited

18 liability company organized and existing under the laws of the State of Delaware.

19 On information and belief, its principal offices are located in Burlingame,

20 California. Defendants Neal Kaufman and Sean McAvoy are Managing Members of

21 HCM.

22     11.   Defendant Hillair Capital Investments LP ("HCI") is a limited

23 partnership organized and existing under the laws of the Cayman Islands.

24 On information and belief, its principal offices are located in Burlingame,

25 California. HCI purports to invest in certain publicly-traded, American and

26 Canadian small cap companies. HCM purports to be "the investment adviser to

27 HCI."

28     12.   HCM and HCI are often collectively referred to as "Hillair."

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

13.     Defendant Haven Beauty Inc. ("Haven") is a corporation organized and existing under the laws of the State of Delaware. On information and belief, Haven is wholly owned by one or both of HCM and HCI. Its principal place of business is located in Lake Forest, California.

14.     Defendant Neal Kaufman is an individual who, on information and belief, resides in the State of California. Kaufman is a Managing Member of HCM, and is a member of the Board of Directors of Haven.

15.     Defendant Sean McAvoy is an individual who, on information and belief, resides in the State of California. McAvoy is a Managing Member of HCM, and is a member of the Board of Directors of Haven.

16.     On information and belief, each Defendant is, and at all relevant times herein mentioned was, the agent, servant and/or employee of one or more of the other Defendants, and in doing the acts herein alleged, acted within the scope and course of such agency and employment.

17.     On information and belief, at all relevant times there existed a unity of interest and ownership between HCM and/or HCI, on the one hand, and Haven, on the other hand, such that any individuality and separateness of these Defendants ceased to exist and that Haven is simply the business conduit and alter ego of either or both HCM and HCI. Adherence to the fiction of the separate existence of Haven, HCM and HCI would sanction fraud and promote injustice.

18.     On information and belief, Kaufman and McAvoy are the alter egos of HCM, HCI and Haven, such that any individuality and separateness of these Defendants ceased to exist, and that HCM, HCI and Haven are simply the business conduit and alter ego of either or both Kaufman and McAvoy. Adherence to the fiction of the separate existence of Haven, HCM and HCI, on the one hand, from Kaufman and McAvoy, on the other hand, would sanction fraud and promote injustice.

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

19.     Plaintiffs are ignorant of the true names and capacities of Defendants DOES 1 through 10 and therefore sues these Defendants by such fictitious names. Plaintiffs will amend this complaint to allege these Defendants' true names and capacities when ascertained. Each of these Defendants is responsible and liable in some manner for the events alleged herein and the damages caused thereby.

## BACKGROUND FACTS

### The Kardashians.

20.     Kourtney, Kim and Khloe Kardashians are sisters who are best known for their television series, *Keeping Up With The Kardashians*, which has been running on the E! Network since 2007. In addition to their television series, they also endorse various commercial products, such as clothing, jewelry, accessories, fragrances, and cosmetics. In connection with some of these endorsements, they license the use of their names, images and likenesses to be used in connection with the products. As a general matter, Kourtney, Kim, and Khloe enter into endorsement deals through their respective "loan out" corporations, *i.e.*, Plaintiffs 2Die4Kourt (Kourtney), Kimsaprincess (Kim), and Khlomoney (Khloe).

### The Licensing Agreement Dated May 9, 2012.

21.     In 2012, the Kardashians agreed to license their trademarks, names, likenesses, images, and related intellectual property to Boldface Licensing + Branding, Inc. ("Boldface") for use in the development, marketing and sale of color cosmetics. Effective May 9, 2012, Kourtney, Kim, and Khloe, through their respective loan out corporations, entered into the License Agreement with the Licensee, Boldface. The key provisions of the License Agreement are summarized in the next several paragraphs.

22.     <u>License of Kardashian Image</u>—In the Agreement, the Kardashians grant to the Licensee the exclusive right and license during the Term to use the "Kardashian Image" for the sole purpose of developing, manufacturing, and selling the Products. (¶ 3(A), p. 5.) The Kardashians are entitled to approve and disapprove

Kinsella Weitzman Iser Kump & Aldisert llp

808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

any uses of the Kardashian Image. (¶ 7, p. 21.) The "Kardashian Image" is defined broadly to include not just photographs of the individual Kardashians, but also their names and trademarks. Specifically, "Kardashian Image" is defined as "the trademark 'Kardashian' and each Kardashian's name, fame, nickname, initials, autograph, voice, video, film portrayals or performances, photograph (including, without limitation, the Beauty Shots (as defined in Section 4.A below) likeness and image or facsimile image, and any other likeness of, or means of endorsement by, each Kardashian used in connection with the advertising, promotion and sale of goods, products or services." (¶ 1.A.)

23.   <u>Termination</u>—The Kardashians have the right to terminate the License Agreement immediately upon written notice to Licensee if: (a) Licensee fails to make timely payments and payments not received within 10 business days after written notice (¶ 11(B), p. 25); and (b) Licensee breaches any other material term and fails to cure within 30 days after written notice (¶ 11(C), p. 25).) Upon termination by the Kardashians, the Licensee shall accelerate and immediately pay to the Kardashians any unpaid Guaranteed Minimum Royalty (GMR) Payments and any Royalty Payments that are due or would be due (¶ 11(G), p. 25.)

24.   <u>No Right to Use Image upon Expiration or Termination</u>. Paragraph 13 of the License Agreement states:

> Licensee acknowledges and agrees that upon and after the expiration or earlier termination of this Agreement, it shall not be entitled to, and shall not, make use of or deal with any of the rights granted by the [Kardashians] herein including right to use the Kardashian Image, or any print advertisements, other advertising or promotional or other materials (or any parts or portions thereof) that contain the Kardashian Image, in any manner whatsoever …. (¶ 13, p. 27.)

Kinsella Weitzman Iser Kump & Aldisert llp
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800  •  FAX 310.566.9850

25.    <u>Survival of Obligations Following Termination</u>. Paragraph 28 of the License Agreement provides that: "Notwithstanding termination or expiration of this Agreement, for any reason whatsoever, the conditions and provisions of this Agreement contained in Sections 3.B, 5.C-E, 1l.F, 12.F, 13, 14.C-D, 15, and 18-31 shall continue and survive." (¶ 28, p. 37.)

26.    <u>Dispute Resolution and Governing Law</u>. Paragraph 27.A provides that the Agreement "shall be governed by and construed in accordance with the laws of the State of California applicable to agreement made and to be performed in such state." The Paragraph also provides for a mandatory JAMS arbitration clause: "All claims, disputes and other matters arising out of or relating to this Agreement shall be submitted to, and determined by, binding arbitration in accordance with Judicial Arbitration and Mediation Services (JAMS) …"

27.    <u>Availability of Injunctive Relief in Court</u>. Paragraph 27.A provides that the arbitration clause should not be understood to preclude injunctive relief in a court: "Notwithstanding the foregoing, nothing herein shall restrict or limit a Party from seeking or obtaining injunctive relief as provided herein." Paragraph 27.B expands on this:

> The Parties hereto recognize that a breach of any of the covenants and agreements contained herein regarding the licensing or use of the Kardashian Image will cause irreparable harm and that monetary damages alone will not be sufficient to cure any resultant harm to the injured Party. Therefore, the Parties agree that in the event of any actual or threatened breach by the Licensors, on the one hand, or by Licensee, on the other hand, during the Term hereof or after the termination or expiration of the term hereof, of any of the covenants and agreements contained herein relating to the licensing or use of the Kardashian

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

Image, the other shall be entitled, in addition to such other rights and remedies which may be available to such party or parties at law or in equity, to injunctive relief, without being required to give any notice, to show actual damages, or to post any bond or other security, against any such actual or threatened breach. (¶ 27.A, p. 36.)

### The "Kardashian Beauty" Trademark.

28.    In connection with the License Agreement, the name "Kardashian Beauty" was registered in or about May 2013 to the Kardashian Corporations in the United States Patent & Trademark Office, Reg. No. 4909148 in the following classes:  IC 003. US 001 004 006 050 051 052. G & S: Cosmetics, cosmetic preparations, eye shadow, eye liner, foundation, face powders, blush, facial highlighter, mascara, false eyelashes, body powders, lipstick, lip gloss, cosmetic palettes, namely, compacts containing make-up, and body makeup.

29.    The Kardashians have also obtained registrations in the name of the Kardashian Corporations for the use of the mark "Kardashian Beauty" in other classes as well.

### Hillair Takes Over the License Agreement.

30.    When Boldface ran into financial problems, Hillair agreed in June 2013 to loan $1 million to Boldface in the form of secured convertible debt, and made an additional loan of $550,000 two months later.

31.    In March 2014, with Boldface's back to the wall and no ability to negotiate, Hillair forced Boldface to covert Hillair's debt into preferred equity, and made an additional $1 million loan. A few months later, Hillair tied the noose even tighter when it loaned an additional approximately $1.65 million to Boldface.

32.    It was clear by the summer of 2014 that Boldface was financially underwater. As a secured creditor of Boldface, Hillair therefore filed suit against Boldface in Los Angeles County Superior Court. Hillair obtained an order from the

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

Court appointing a receiver, and authorizing the receiver to sell the assets of Boldface, the most notable of which was the License Agreement.

33.     In the receivership proceeding, Hillair presented the winning bid and in October 2014 was awarded the assets of Boldface, including the License Agreement. Hillair assigned the License Agreement to "Newco Beauty Company, Inc.," a Delaware shell company wholly owned by Hillair. Newco Beauty then changed its name to Haven Beauty, Inc., the Defendant in this case.

**The Kardashians Send Notices of Breaches Under the License Agreement.**

34.     As of February 2016, Hillair and Haven had not paid the Kardashians any royalties. In addition, after acknowledging their obligation under the License Agreement to pay legal fees and costs incurred by the Kardashians pursuant to indemnification provisions, Hillair and Haven reneged and refused to pay those amounts due and owing to the Kardashians.

35.     On February 26, 2016, the Kardashians' counsel sent to Hillair a letter giving notice of certain breaches under the License Agreement and providing an opportunity to cure as required thereunder (the "February Breach Letter"). Specifically, the February Breach Letter demands payment of the royalties and legal fees incurred by the Kardashians from various legal actions relating to products sold under the License Agreement, and demanded that Hillair stop its unauthorized use of the Kardashian Images.

36.     On April 1, 2016, the Kardashians' counsel gave further notice to Hillair's counsel of additional breaches under the License Agreement and provided an opportunity to cure.

37.     Paragraph 27(A) of the License Agreement requires that before any arbitration concerning the License Agreement is commenced, the parties must attempt "to settle the matter through good faith negotiations within 30 days of the date from which such claim, dispute or other matter arose." (¶ 27(A), p. 36.) Notwithstanding this clear requirement, less than 30 days after the Kardashians sent

Kinsella Weitzman Iser Kump & Aldisert llp
808 Wilshire Boulevard, 3RD Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

their February Breach Letter, Hillair without warning on March 21, 2016 filed a complaint in the Los Angeles County Superior Court against the Kardashians, naming only HCI and HCM as plaintiffs ("the Superior Court Action"). Hillair strategically chose not to name Haven as a plaintiff in the Superior Court Action in the hopes of avoiding the JAMS arbitration clause in the License Agreement

38.     After the filing of the complaint in the Superior Court Action, the Kardashians instituted a JAMS arbitration against Haven and Hillair regarding the parties' issues on April 11, 2016. As noted below, the Superior Court later compelled Hillair to arbitrate all of its claims in the Superior Court Action in the JAMS arbitration (i.e., Hillair's strategic attempt to avoid arbitration by not naming Haven did not work).

### The Kardashians Repeatedly Attempt to Resolve the Parties' Issues

39.     In connection with the filing of the Superior Court Action, Hillair and its agents made various disparaging remarks regarding the Kardashians. Nevertheless, the Kardashians, through their general counsel, Todd Wilson, and their manager, Kris Jenner, attempted to reach out several times to Defendants McAvoy and Kaufman to discuss a resolution of the parties' issues such that the Kardashian Beauty brand would not be destroyed by litigation. When they finally spoke, Mr. Wilson and Ms. Jenner understood that an agreement had been reached to place all litigation on hold while a resolution was discussed. Soon thereafter, Defendants made new demands that must be met before any further discussions could take place. Even after Mr. Wilson agreed to meet many of the demands, the individual Defendants withdrew from any discussions.

### The State Court Grants the Kardashians' Motion to Compel Arbitration.

40.     On May 11, 2016, after Defendants refused to discuss a resolution, the Kardashians filed their response to the complaint in the Superior Court Action, which consisted of a motion to compel arbitration and to stay the action pending the arbitration.

41.     On June 24, 2016, the Superior Court, the Hon. Richard L. Fruin, Jr. presiding, granted the Kardashians' motion to compel arbitration and stayed the case in its entirety. All claims in the Superior Court Action have now been compelled to a JAMS arbitration.

**Haven and Hillair Ask for the Kardashians' Consent for a New Line of Kardashian Beauty Cosmetics Products And the Kardashians Refuse Consent**

42.     Paragraph 7 of the License Agreement requires that the Licensee obtain the Kardashians' approval before using any of the Kardashian Images:

> Prior Approval. The Licensors shall be entitled to approve, as well as disapprove, of any images, live action footage or other uses of the Kardashian Image that would in the Licensors' or Kardashians' sole judgment impair the value and marketability of the Kardashian Image or subject the Kardashians to public ridicule or scorn. Additionally, Licensee agrees that no use of the Kardashian Image or any item used in connection therewith, and any other means of endorsement by the Kardashians will be made hereunder without the written approval of Licensors prior to any public release. The Licensors shall provide Licensee specific grounds for any disapproval within seven (7) business days of the Licensors' receipt of an intended use of the Kardashian Image. Any items or matters submitted to the Licensors for their approval which are not disapproved within seven (7) business days after the Licensors' receipt thereof shall be deemed approved hereunder. The Licensors' approvals pursuant to this Agreement shall not be withheld unreasonably and Licensors shall cooperate with Licensee in connection

Kinsella Weitzman Iser Kump & Aldisert llp
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

Kinsella Weitzman Iser Kump & Aldisert llp

808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

1       with the approval of any items or matters hereunder. (¶ 7,

2       p. 21.)

3       43.     On May 12, 2016, the day after the motion to compel arbitration was

4  filed, Mr. Wilson got an email from Jeanene Morgan, Haven's CFO, asking about

5  addresses for the Kardashians to send new product samples for the Kardashians'

6  approval.

7       44.     Mr. Wilson was obviously surprised by the email given that Defendants

8  McAvoy and Kaufman had refused to even have a conversation about the future of

9  the brand. Indeed, Haven and Hillair had not sent new product samples to the

10  Kardashians to approve in a very long time. Mr. Wilson responded as follows: "I

11  must say that we are puzzled by this as Sean and Neal made very clear earlier this

12  week that they were no longer interested in even discussing further development of

13  the brand.  We reached out to them several times to discuss options for the brand

14  and they refused to talk and their litigator – who is also your/Haven's litigator – has

15  been making public statements calling the Kardashians liars. We can only interpret

16  your request as part of some litigation strategy." Mr. Wilson continued that Haven

17  was "free to send samples" of the products, *but that the "the K[ardasians]s will not*

18  *approve anything, or consider approving anything until Haven/Hillair is no longer*

19  *in breach of its obligations under the contract.*" (emphasis added.)

20       45.     Haven then sent the product samples to the Kardashians, with forms

21  expressly seeking the Kardashians' approval of the products. With the approval

22  forms, Haven explained that it had "developed" new lines of Kardashian Beauty

23  Products called "Summer Squad" and "Fierce."

24       46.     On May 27, 2016, Mr. Wilson emailed Ms. Morgan explaining that the

25  Kardashians were *not approving* any of these new products: "I want to acknowledge

26  that I received the deliveries per your email below. Under the circumstances, I need

27  to reiterate that due to the uncured breaches of Hillair and Haven detailed in our

28  prior emails and letters, my clients are not required to provide any services, which

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1   includes reviewing products for approval/disapproval.  As such, please keep in mind

2   that their 'silence' is not and should not be deemed approval or consent."

3       47.     The reason Haven sent the products to the Kardashians for approval is

4   because obtaining the Kardashians' approval under paragraph 7 of the License

5   Agreement, is an *express condition of Defendants' license* to use of the

6   Kardashians' trademarks and images.

7       48.     Notwithstanding this condition of the License Agreement, Haven

8   ignored the Kardashians' disapproval and planned to go forward with their "Fierce"

9   and "Summer Squad" lines, despite the Kardashians' express disapproval. However,

10  at no time, did Haven or any other Defendant tell the Kardashians that they were

11  ignoring the Kardashians' disapproval or advise them that they were planning to go

12  forward with the "Fierce" and "Summer Squad" lines after Mr. Wilson's email of

13  May 27, 2016.

14      49.     On information and belief, Defendants Hillair, Kaufman, and McAvoy

15  expressly or impliedly directed Haven's officers, including but not limited to Ms.

16  Morgan, to ignore Mr. Wilson's disapproval on behalf of the Kardashians. As such,

17  Hillair, Kaufman, and McAvoy are all a moving, active and conscious force behind

18  the trademark infringement and right to publicity violations discussed below.

19                  **The Kardashians Terminate the License Agreement.**

20      50.     On June 22, 2016, the Kardashians made one final effort to seek Hillair

21  and Haven's compliance with the License Agreement. Pursuant to paragraph 11 of

22  the Agreement, the Kardashians gave notice of their intent to terminate the License

23  Agreement in ten (10) business days unless Hillair and Haven cured their breaches

24  by paying all amounts due to the Kardashians under the License Agreement.

25      51.     In particular, the Kardashians sought payment of all outstanding legal

26  fees and costs pursuant to the indemnity obligations under the License Agreement.

27  The Kardashians also sought payment of all royalties due to the Kardashians under

28  the License Agreement. In fact, on the second point, and in a show of good faith, the

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3ᴿᴰ FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

Kardashians recognized that the parties had a dispute over whether any "Guaranteed Minimum Royalties" were due under the License Agreement, and only demanded that actual earned royalties be paid.

52.     Ten business days from June 22, 2016 was July 7, 2016, i.e., over two weeks later. Notwithstanding the ample time given, Defendants did not reach out to the Kardashians to discuss the breaches discussed in the breach notice.

53.     Rather, on July 7, 2016, just before 6:00 p.m. PDT, Defendants' litigation counsel sent a letter saying that Defendants would not cure their breaches. On the issue of payment of royalties, Defendants' litigation counsel made it very clear that Defendants would *never* pay royalties under the License Agreement, unless the Kardashians first compensated them for supposed damages they claim they are owed in the now-stayed Superior Court Action.

54.     The specific "material breaches" Defendants referenced were the Kardashians' supposed failures to provide marketing support for the Kardashian Beauty line. In this regard, Defendants are willfully ignoring the fact that the License Agreement expressly states that providing such support is dependent on Defendants paying the Kardashians all royalties. In particular, paragraph 5.C provides that any obligation of the Kardashians to provide such services is expressly subject to the requirement that all payments to the Kardashians "are current and up to date and Licensee is not otherwise in material breach of any provisions of this Agreement." Thus, Defendants' contention that the failure of the Kardashians to provide marketing support excuses their payment obligation is contrary to the express terms of the License Agreement.

55.     On July 8, 2016, at 12:08 a.m. PDT, the Kardashians sent a notice terminating the License Agreement, effective immediately. The Kardashians demanded, among other things, that, pursuant to paragraph 13 of the License Agreement, Defendants stop using the Kardashian Image (i.e., all images and trademarks of the Kardashians, all uses of the Kardashian name, etc.) immediately.

Kinsella Weitzman Iser Kump & Aldisert llp
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

## The Defendants Refuse to Respect the Termination
## and Launch New Products Which Were Never Approved by The Kardashians

56.     Defendants refused to stop using the Kardashian Image, including the Kardashian Beauty mark, images of the Kardashians, and the Kardashians' names, after the termination. On information and belief, Defendants Hillair, Kaufman, and McAvoy expressly or impliedly directed Haven's officers, including but not limited to Ms. Morgan, to ignore the Kardashians' termination and to continue using the Kardashian Beauty mark, images of the Kardashians, and the Kardashians' names' in commerce. As such, Hillair, Kaufman, and McAvoy are all a moving, active and conscious force behind the trademark infringement and right to publicity violations discussed below.

57.     Not only did Defendants refuse to stop using the Kardashian Image, including the Kardashian Beauty mark, images of the Kardashians, and the Kardashians' names, after the termination, they actually launched a new line of products on July 8, 2016. In particular, Defendants launched the Fierce line that had been specifically disapproved by the Kardashians. On information and belief, Defendants Hillair, Kaufman, and McAvoy expressly or impliedly directed Haven's officers, including but not limited to Ms. Morgan, to ignore Mr. Wilson's prior disapproval of the Fierce line and to launch it despite the Kardashians' disapproval. As such, Hillair, Kaufman, and McAvoy are all a moving, active and conscious force behind the trademark infringement and right to publicity violations discussed below.

58.     Not only did Defendants refuse to stop using the Kardashian Image, including the Kardashian Beauty mark, images of the Kardashians, and the Kardashians' names, after the termination, they actually partnered with a mobile app developer to include the Kardashian Beauty mark, images of the Kardashians, and the Kardashians' names as a feature of a popular mobile app allowing people to "virtually" try on "virtual" makeup through "selfies" on the mobile app. But nothing

in the License Agreement gives Defendants such a valuable right (particularly without the Kardashians' express approval, which was *never* sought and *never* obtained).

## **FIRST CLAIM FOR RELIEF**

### **(Federal Trademark Infringement – 15 U.S.C. § 1114)**

59.     Plaintiffs repeat and reallege all prior allegations of the Complaint.

60.     The Kardashian Corporations are the owner of the standard character mark, KARDASHIAN BEAUTY, USPTO Reg. No. 4909148 ("the Kardashian Beauty Mark"). The Kardashian Beauty Mark was registered on the Principal Register on March 1, 2016, in the following classes:  IC 003. US 001 004 006 050 051 052. G & S: Cosmetics, cosmetic preparations, eye shadow, eye liner, foundation, face powders, blush, facial highlighter, mascara, false eyelashes, body powders, lipstick, lip gloss, cosmetic palettes, namely, compacts containing make-up, and body makeup.

61.     Plaintiff 2Die4Kourt is the owner of the standard character mark, KOURTNEY KARDASHIAN, USPTO Reg. No. 4516081 ("the Kourtney Mark"). The Kourtney Mark was registered on the Principal Register on April 15, 2014 in the following classes: IC 035. US 100 101 102. G & S: Advertising services, namely, promoting the brands, goods and services of others; endorsement services, namely, promoting the goods and services of others.

62.     Plaintiff Kimsaprincess, Inc., is the owner of the standard character mark, KIM KARDASHIAN, USPTO Reg. No. 3919997 ("the Kim Mark"). The Kim Mark was registered on the Principal Register on February 15, 2011 in the following classes: IC 003. US 001 004 006 050 051 052. G & S: Cosmetics.

63.     Plaintiff Khlomoney, Inc., is the owner of the mark, KHLOE KARDASHIAN, USPTO Reg. No. 4516080 ("the Khloe Mark"). The Khloe Mark was registered on the Principal Register on April 15, 2014 in the following classes: IC 035. US 100 101 102. G & S: Advertising services, namely, promoting the

COMPLAINT FOR INJUNCTIVE RELIEF

brands, goods and services of others; endorsement services, namely, promoting the goods and services of others.

64.  Collectively, the Kardashian Beauty Mark, the Kourtney Mark, the Kim Mark, and the Khloe Mark are referred to collectively as the "Registered Marks"

65.  Defendants have used, and continue to use the Registered Marks in commerce in connection with the sale, offering for sale, distribution and advertising of Defendants' goods and services, along with the goods and services of persons associated with Defendants. This use is not authorized by Plaintiffs.

66.  Defendants use of the Registered Marks is likely to cause confusion, or to cause mistake or to deceive consumers as to the affiliation, association, connection, endorsement, or sponsorship of Plaintiffs with Defendants.

67.  Defendants used the Registered Marks with prior knowledge of Plaintiffs' rights therein, and with the intent to capitalize on and trade on the established goodwill of Plaintiffs. Defendants' use of the Registered Marks was in bad faith and with knowledge (or reckless disregard of the fact) that such use would cause confusion, mistake and deception.

68.  As a result of Defendants' conduct, Plaintiffs have suffered and will continue to suffer irreparable harm unless Defendants' conduct is enjoined and restrained by this Court.

69.  Defendants' misconduct is such that this is an "exceptional" case within the meaning of the Lanham Act.

## SECOND CLAIM FOR RELIEF

### (False Association or Endorsement – 15 U.S.C. § 1125(a))

70.  Plaintiffs repeat and reallege all prior allegations of the Complaint.

71.  The Kardashians' are world-famous personalities. The Kardashians' names and likenesses are famously associated with Plaintiffs and conjure up the Kardashians' identities and persona in the minds of the public. The Kardashians'

Kinsella Weitzman Iser Kump & Aldisert llp
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

names and likenesses are famously associated with Plaintiffs and are distinctiveness and  are used as trademarks by Plaintiffs.

72.      Defendants have used, and continue to use, the Kardashians' names, likenesses, identities, and persona in commerce in order to confuse the public into believing that Plaintiffs sponsor, endorse and are associated with the Plaintiffs. In fact, Plaintiffs do not sponsor or endorse Defendants, and they are not associated with Defendants.

73.      As a result of Defendants' unauthorized use of the Kardashians' names, likenesses, identities, and persona in commerce, the public is mistakenly confused that Plaintiffs sponsor, endorse and are associated with Defendants.

74.      Defendants used the Kardashians' names, likenesses, identities, and persona in commerce with prior knowledge of Plaintiffs' rights therein, and with the intent to capitalize on and trade on the established goodwill of Plaintiffs. Defendants use of the Kardashians' names, likenesses, identities, and persona in commerce was in bad faith and with knowledge (or reckless disregard of the fact) that such use would cause confusion, mistake and deception.

75.      As a result of Defendants' conduct, Plaintiffs have suffered and will continue to suffer irreparable harm unless Defendants' conduct is enjoined and restrained by this Court.

76.      Defendants' misconduct is such that this is an "exceptional" case within the meaning of the Lanham Act.

### THIRD CLAIM FOR RELIEF

### (Violation of the Right to Publicity Under California Law)

77.      Plaintiffs repeat and reallege all prior allegations of the Complaint.

78.      The Kardashians' names, likenesses, identities, and persona are widely known and closely associated with Plaintiffs. Defendants' unauthorized use of the Kardashians' names, likenesses, identities, and persona invokes the Kardashians in the minds of the public. The unauthorized use of the Kardashians' names,

Kinsella Weitzman Iser Kump & Aldisert llp
808 Wilshire Boulevard, 3ʳᵈ Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

Kinsella Weitzman Iser Kump & Aldisert LLP
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

likenesses, identities, and persona are protected by California common law and by California Civil Code § 3344.

79.    As a result of Defendants' intentional and unauthorized use of the Kardashians' names, likenesses, identities, and persona in commerce in its advertising, sales, and offers to sell, Plaintiffs have suffered and will continue to suffer irreparable harm unless Defendants' conduct is enjoined and restrained by this Court.

## FOURTH CLAIM FOR RELIEF
### (California Common Law Trademark Infringement)

80.    Plaintiffs repeat and reallege all prior allegations of the Complaint.

81.    The Kardashians' are world-famous personalities. The Kardashians' names and likenesses are famously associated with Plaintiffs and conjure up the Kardashians' identities and persona in the minds of the public.

82.    Defendants have used, and continue to use, the Kardashians' names, likenesses, identities, and persona in commerce in order to confuse the public into believing that Plaintiffs sponsor, endorse and are associated with the Kardashians. In fact, Plaintiffs do not sponsor or endorse Defendants, and they are not associated with Defendants.

83.    As a result of Defendants' unauthorized use of the Kardashians' names, likenesses, identities, and persona in commerce, the public is mistakenly confused that Plaintiffs sponsor, endorse and are associated with Defendants.

84.    Defendants used the Kardashians' names, likenesses, identities, and persona in commerce with prior knowledge of Plaintiffs' rights therein, and with the intent to capitalize on and trade on the established goodwill of Plaintiffs. Defendants use of the Kardashians' names, likenesses, identities, and persona in commerce was in bad faith and with knowledge (or reckless disregard of the fact) that such use would cause confusion, mistake and deception.

85.    As a result of Defendants' conduct, Plaintiffs have suffered and will continue to suffer irreparable harm unless Defendants' conduct is enjoined and restrained by this Court.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief as follows:

A.    For a temporary restraining order, as well as preliminary injunctive relief, prohibiting Defendants from any use of the Mark, and any use of the Kardashians' names, likenesses, identities, and persona, pending the outcome of a mandatory JAMS arbitration under the License Agreement;

B.    Following the grant of appropriate preliminary injunctive relief, for a stay of this action pursuant to the Federal Arbitration Act and the Court's inherent powers to efficiently manage its docket, pending a mandatory JAMS arbitration under the License Agreement;

C.    For permanent injunctive relief prohibiting Defendants from any use of the Mark, and any use of the Kardashians' names, likenesses, identities, and persona, following the outcome of a mandatory JAMS arbitration under the License Agreement;

D.    For Plaintiffs' reasonable attorneys' fees and costs; and

E.    For such other relief as may be just and proper.

DATED: July 13, 2016            Respectfully Submitted:

KINSELLA WEITZMAN ISER
KUMP & ALDISERT LLP


By:    */s/ Michael J. Kump*
Michael J. Kump
Attorneys for Plaintiffs

10669/358573

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850