KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
Michael J. Kump (SBN 100983)
  mkump@kwikalaw.com
Jonathan P. Steinsapir (SBN 226281)
  jsteinsapir@kwikalaw.com
Gregory P. Korn (SBN 205306)
  gkorn@kwikalaw.com
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Telephone: 310.566.9800
Facsimile: 310.566.9850

Attorneys for All Named Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

2DIE4KOURT, a California corporation, KIMSAPRINCESS INC., a California corporation, KHLOMONEY INC., a California corporation, KOURTNEY KARDASHIAN, an individual, KIM KARDASHIAN WEST, an individual, and KHLOE KARDASHIAN, an individual,

Plaintiffs,

vs.

HILLAIR CAPITAL MANAGEMENT LLC, a Delaware Limited Liability Company; HILLAIR CAPITAL INVESTMENTS LP, a Cayman Islands Limited Partnership; and HAVEN BEAUTY INC., a Delaware corporation;  NEAL KAUFMAN, an individual SEAN MCAVOY, an individual; and DOES 1 through 10, inclusive,

Defendants.

Case No. 8:16-CV-01304 JVS (DFMx)

[Notice of Related Case Filed for Case No. 8:16-CV-01307 JVS (DFMx)]

**COMPENDIUM OF SUPPORTING DECLARATIONS  AND EXHIBITS IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

Date:   August 22, 2016
Time:   1:30 p.m.
Crtrm: 10C [Ronald Reagan Fed. Bldg.]

**Motion for Preliminary Injunction and Proposed Order; and Proposed Preliminary Injunction Submitted Separately**

Action Filed:   July 13, 2016
Trial Date:     Not Set

<u>**DECLARATION OF KIM KARDASHIAN WEST**</u>

I, Kim Kardashian West, declare as follows:

1.      Unless stated otherwise, I have personal knowledge of the following facts, and I could and would testify competently to such facts under oath.

2.      I and my loan-out corporation Kimsaprincess Inc. are plaintiffs in this action, along with my sisters Kourtney and Khloe Kardashian, and their respective loan-out corporations, 2Die4Kourt and Khlomoney, Inc. (collectively, the "Kardashians"). I am submitting this Declaration in support of our Motion for Preliminary Injunction.

3.      My sisters and I, and other family members, appear on the television series called *Keeping Up With the Kardashians*, which has aired on the E! television network since around 2007.

4.      In addition to our television work, Kourtney, Khloe and I also endorse various commercial products, such as clothing, jewelry, accessories, and cosmetics. In connection with some of these endorsements, we each license the use of our trademarks, names, images and likenesses to be used in connection with the products. Generally, we enter into licensing deals through our loan out corporations.

5.      Kourtney, Khloe and I are very appreciative of our fans, and when we put our names on products or services, we want to be sure that the products or services are something that we can be proud of sharing with our fans. Because of this, it is important to all three of us that those products and services that use our trademarks, names, likeness and images be of a quality and nature which will appeal to our fan base and be consistent with the "Kardashian brand" that we have created over the years. As a general matter, we therefore insist that we have the right to review and approve of all products using our names, images or likenesses before such products are commercially released to the public.

6.      Kourtney, Khloe and I, through our loan-out corporations, entered into a Licensing Agreement dated May 9, 2012, which grants the right to use our

1  trademarks, names, images and likenesses in connection with the sale and promotion

2  of color cosmetics products (the "License Agreement"). Since 2013, those color

3  cosmetic products have been sold and advertised under the brand name "Kardashian

4  Beauty," which is a registered trademark owned jointly by our three loan-out

5  corporations.

6        7.     On July 8, 2016, my sisters and I through our lawyers terminated the

7  License Agreement. We have read on the internet and heard from other sources that

8  Haven Beauty on July 8, 2016 launched a new product line called "Fierce" with our

9  trademark "Kardashian Beauty," and that Haven Beauty appeared at the Beautycon

10 event held at the downtown LA Convention Center on July 9, 2016 to advertise and

11 promote the new product line. We also understand that Haven Beauty entered into

12 some type of arrangement with another company for the "YouCam Makeup app"

13 that allows users to "virtually" try on new products from the "Fierce" product line.

14       8.     Kourtney, Khloe and I did not approve the "Fierce" products being

15 promoted and sold by Haven Beauty under the Kardashian Beauty brand. In fact,

16 I understand that my lawyer, Todd Wilson, sent an email to Haven Beauty saying

17 we would not approve of the products a few months ago. In addition, my sisters and

18 I did not approve the use of our trademarks, names, likenesses and images in

19 connection with the "YouCam Makeup app."

20       9.     Based upon my experience over the years, I believe that when our fans

21 see these new products being promoted and offered for sale using our trademarks,

22 names, likenesses and images, they believe that my sisters and I endorse those

23 products and stand behind them, 100%. But that is not the case with the "Fierce"

24 Collection or with the "YouCam Makeup app." We do not support or endorse those

25 products, and we did not and do not approve of Haven Beauty's use of our

26 trademarks, names, likenesses and images.

27       10.    The primary business of Kourtney, Khloe and me revolves around our

28 licensing of our trademarks, names, likenesses and images under limited

circumstances we control. We work very hard to ensure that the Kardashian brand means something to our fans and to the public, who view the use of our names as the stamp of approval by us. If another company is allowed to use our trademarks, names, likenesses and images without our permission, or in instances where we have withdrawn our permission, then Kourtney, Khloe and I will lose a very valuable right which we have worked hard over the years to build and grow. We have terminated Haven Beauty's right to use our trademarks, names, likenesses and images, and we respectfully request that our termination be followed. Otherwise, Kourtney, Khloe and I will be severely hurt in our businesses.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my personal knowledge.

Executed on July 20, 2016, in Los Angeles, California.

Kim Kardashian West

DECLARATION OF KIM KARDASHIAN WEST

## DECLARATION OF KOURTNEY KARDASHIAN

I, Kourtney Kardashian, declare as follows:

1.      Unless stated otherwise, I have personal knowledge of the following facts, and I could and would testify competently to such facts under oath.

2.      I and my loan-out corporation 2Die4Kourt are plaintiffs in this action, along with my sisters Khloe Kardashian and Kim Kardashian West, and their respective loan-out corporations, Khlomoney, Inc. and Kimsaprincess Inc. (collectively, the "Kardashians"). I am submitting this Declaration in support of our Motion for Preliminary Injunction.

3.      My sisters and I, and other family members, appear on the television series called *Keeping Up With the Kardashians*, which has aired on the E! television network since around 2007.

4.      In addition to our television work, Kim, Khloe and I also endorse various commercial products, such as clothing, jewelry, accessories, and cosmetics. In connection with some of these endorsements, we each license the use of our trademarks, names, images and likenesses to be used in connection with the products. Generally, we enter into licensing deals through our loan out corporations.

5.      Kim, Khloe and I are very appreciative of our fans, and when we put our names on products or services, we want to be sure that the products or services are something that we can be proud of sharing with our fans. Because of this, it is important to all three of us that those products and services that use our trademarks, names, likeness and images be of a quality and nature which will appeal to our fan base and be consistent with the "Kardashian brand" that we have created over the years. As a general matter, we therefore insist that we have the right to review and approve of all products using our names, images or likenesses before such products are commercially released to the public.

6.      Kim, Khloe and I, through our loan-out corporations, entered into a Licensing Agreement dated May 9, 2012, which grants the right to use our

1  trademarks, names, images and likenesses in connection with the sale and promotion
2  of color cosmetics products (the "License Agreement"). Since 2013, those color
3  cosmetic products have been sold and advertised under the brand name "Kardashian
4  Beauty," which is a registered trademark owned jointly by our three loan-out
5  corporations.

6       7.     On July 8, 2016, my sisters and I through our lawyers terminated the
7  License Agreement. We have read on the internet and heard from other sources that
8  Haven Beauty on July 8, 2016 launched a new product line called "Fierce" with our
9  trademark "Kardashian Beauty," and that Haven Beauty appeared at the Beautycon
10  event held at the downtown LA Convention Center on July 9, 2016 to advertise and
11  promote the new product line. We also understand that Haven Beauty entered into
12  some type of arrangement with another company for the "YouCam Makeup app"
13  that allows users to "virtually" try on new products from the "Fierce" product line.

14       8.     Kim, Khloe and I did not approve the "Fierce" products being
15  promoted and sold by Haven Beauty under the Kardashian Beauty brand. In fact,
16  I understand that my lawyer, Todd Wilson, sent an email to Haven Beauty saying
17  we would not approve of the products a few months ago. In addition, my sisters and
18  I did not approve the use of our trademarks, names, likenesses and images in
19  connection with the "YouCam Makeup app."

20       9.     Based upon my experience over the years, I believe that when our fans
21  see these new products being promoted and offered for sale using our trademarks,
22  names, likenesses and images, they believe that my sisters and I endorse those
23  products and stand behind them, 100%. But that is not the case with the "Fierce"
24  Collection or with the "YouCam Makeup app." We do not support or endorse those
25  products, and we did not and do not approve of Haven Beauty's use of our
26  trademarks, names, likenesses and images.

27       10.    The primary business of Kim, Khloe and me revolves around our
28  licensing of our trademarks, names, likenesses and images under limited

1  circumstances we control. We work very hard to ensure that the Kardashian brand
2  means something to our fans and to the public, who view the use of our names as the
3  stamp of approval by us. If another company is allowed to use our trademarks,
4  names, likenesses and images without our permission, or in instances where we have
5  withdrawn our permission, then Kim, Khloe and I will lose a very valuable right
6  which we have worked hard over the years to build and grow. We have terminated
7  Haven Beauty's right to use our trademarks, names, likenesses and images, and we
8  respectfully request that our termination be followed. Otherwise, Kim, Khloe and I
9  will be severely hurt in our businesses.

10      I declare under penalty of perjury under the laws of the United States of
11  America that the foregoing is true and correct to the best of my personal knowledge.
12      Executed on July 20, 2016, in Nantucket, Massachusetts.

13
14      _____
15          Kourtney Kardashian
16
17
18
19
20
21
22
23
24
25
26
27
28

## DECLARATION OF KHLOE KARDASHIAN

I, Khloe Kardashian, declare as follows:

1.     Unless stated otherwise, I have personal knowledge of the following facts, and I could and would testify competently to such facts under oath.

2.     I and my loan-out corporation Khlomoney, Inc. are plaintiffs in this action, along with my sisters Kourtney Kardashian and Kim Kardashian West, and their respective loan-out corporations, 2Die4Kourt and Kimsaprincess Inc. (collectively, the "Kardashians"). I am submitting this Declaration in support of our Motion for Preliminary Injunction.

3.     My sisters and I, and other family members, appear on the television series called *Keeping Up With the Kardashians*, which has aired on the E! television network since around 2007.

4.     In addition to our television work, Kim, Kourtney, and I also endorse various commercial products, such as clothing, jewelry, accessories, and cosmetics. In connection with some of these endorsements, we each license the use of our trademarks, names, images and likenesses to be used in connection with the products. Generally, we enter into licensing deals through our loan out corporations.

5.     Kim, Kourtney and I are very appreciative of our fans, and when we put our names on products or services, we want to be sure that the products or services are something that we can be proud of sharing with our fans. Because of this, it is important to all three of us that those products and services that use our trademarks, names, likeness and images be of a quality and nature which will appeal to our fan base and be consistent with the "Kardashian brand" that we have created over the years. As a general matter, we therefore insist that we have the right to review and approve of all products using our names, images or likenesses before such products are commercially released to the public.

6.     Kim, Kourtney and I, through our loan-out corporations, entered into a Licensing Agreement dated May 9, 2012, which grants the right to use our

trademarks, names, images and likenesses in connection with the sale and promotion of color cosmetics products (the "License Agreement"). Since 2013, those color cosmetic products have been sold and advertised under the brand name "Kardashian Beauty," which is a registered trademark owned jointly by our three loan-out corporations.

7.      On July 8, 2016, my sisters and I through our lawyers terminated the License Agreement. We have read on the internet and heard from other sources that Haven Beauty on July 8, 2016 launched a new product line called "Fierce" with our trademark "Kardashian Beauty," and that Haven Beauty appeared at the Beautycon event held at the downtown LA Convention Center on July 9, 2016 to advertise and promote the new product line. We also understand that Haven Beauty entered into some type of arrangement with another company for the "YouCam Makeup app" that allows users to "virtually" try on new products from the "Fierce" product line.

8.      Kim, Kourtney and I did not approve the "Fierce" products being promoted and sold by Haven Beauty under the Kardashian Beauty brand. In fact, I understand that my lawyer, Todd Wilson, sent an email to Haven Beauty saying we would not approve of the products a few months ago. In addition, my sisters and I did not approve the use of our trademarks, names, likenesses and images in connection with the "YouCam Makeup app."

9.      Based upon my experience over the years, I believe that when our fans see these new products being promoted and offered for sale using our trademarks, names, likenesses and images, they believe that my sisters and I endorse those products and stand behind them, 100%. But that is not the case with the "Fierce" Collection or with the "YouCam Makeup app." We do not support or endorse those products, and we did not and do not approve of Haven Beauty's use of our trademarks, names, likenesses and images.

10.     The primary business of Kim, Kourtney and me revolves around our licensing of our trademarks, names, likenesses and images under limited

DECLARATION OF KHLOE KARDASHIAN

circumstances we control. We work very hard to ensure that the Kardashian brand means something to our fans and to the public, who view the use of our names as the stamp of approval by us. If another company is allowed to use our trademarks, names, likenesses and images without our permission, or in instances where we have withdrawn our permission, then Kim, Kourtney and I will lose a very valuable right which we have worked hard over the years to build and grow. We have terminated Haven Beauty's right to use our trademarks, names, likenesses and images, and we respectfully request that our termination be followed. Otherwise, Kim, Kourtney and I will be severely hurt in our businesses.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my personal knowledge.

Executed on July 20, 2016, in Los Angeles, California.

_____
Khloe Kardashian

## DECLARATION OF KRIS JENNER

I, Kris Jenner, declare as follows:

1.     Unless stated otherwise, I have personal knowledge of the following facts, and I could and would testify competently to such facts under oath.

2.     I am submitting this Declaration in support of the Motion for Preliminary Injunction filed by my daughters Kourtney and Khloe Kardashian, and Kim Kardashian West, and their respective loan-out corporations, 2Die4Kourt, Khlomoney, Inc., and Kimsaprincess, Inc. (collectively, the "Kardashians"). When referring to my daughters individually in this Declaration, I refer to them by their first name to avoid confusion (and not out of disrespect for the Court).

3.     I manage the careers of all six of my children, as well as my own career (Kourtney, Kim, Khloe, and Rob Kardashian, along with Kendall and Kylie Jenner). I also have my own production company, Kardashian Jenner Communications.

4.     I am submitting this Declaration to address several matters: (a) the enormous amount of time and effort over the last decade that I, Kourtney, Kim and Khloe have each put into building name recognition, and making their many and varied business activities a success; (b) the importance and extent to which Kourtney's, Kim's and Khloe's individual names—along with the family name "Kardashian"—are as "brands" for their respective fans; and (c) the strong bond and trust that exists between Kourtney, Kim and Khloe, and their many loyal fans.

5.     When Kourtney, Kim and Khloe put their names on products and services, they want to be sure that the products and services are something that they can be proud of sharing with their fans. As their manager, this is important to me as well because I want to protect the integrity and value of their collective and individual brands. Therefore, when we are discussing possible endorsements with all types of companies in different areas of commerce, it is critically important to all of us that those products and services that use the Kardashians' trademarks, names, likenesses and images be of a quality and nature which will appeal to the girls' fan

base and be consistent with the "Kardashian brand" that we have worked hard over the years to create and grow. As a general matter, Kourtney, Kim and Khloe insist that they have the right to review and approve of all products using their names, images or likenesses before such products are commercially released to the public.

6.      For all the reasons stated in my Declaration, I strongly believe, as the manager of Kourtney, Kim and Khloe's careers, that it is extremely harmful to their collective and individual brands, and to their careers and business pursuits, to have Haven Beauty and Hillair using the "Kardashian" name and trademarks, and the girls' individual trademarks, names and images, to sell cosmetic products which they did not approve of and do not support, especially after the girls have terminated their relationship with Haven Beauty and Hillair, and told them they can no longer use those trademarks, names and images.

### Our Reality TV Series, *Keeping Up With the Kardashians*

7.      My family and I are best known for our reality television series, *Keeping Up with the Kardashians* ("KUWTK"), which is broadcast on the E! Entertainment Network. Our show premiered in 2007, and was a success from the start. In just our first month, the show became the highest-rated series aired on Sunday nights for adults 18-34.

8.      From that successful start, the series continued to grow in ratings and popularity. We are currently filming our 12th season, which started broadcasting on E! on May 1, 2016, and we will start filming our 13th season in a few weeks. The show is currently broadcast in over 160 countries and is the highest-rated and most watched telecast ever on E!. The show has won several consecutive Teen Choice Awards and People's Choice Awards. Kourtney, Kim and Khloe are executive producers on the show, as am I.

9.      Based on the success of KUWTK, over the years there have been several successful spin-off series broadcast on E!, including *Kourtney and Khloe*

*Take Miami* (2009), *Kourtney and Kim Take New York* (2011), *Khloe & Lamar* (2011), and *Kourtney and Khloe Take the Hamptons* (2014).

10.    Based on the success of KUWTK and the spin-off shows, E! has also broadcast several television specials featuring special events involving family members.

**<u>Leaders in Social Media Field</u>**

11.    From very early in their careers, Kourtney, Kim, Khloe and I have been very focused on the emerging power of social media as a way to communicate with fans. Social media, such as Facebook, Twitter, Instagram, and Snapchat, allows the girls to have direct and immediate contact with their fans, who appreciate the intimacy in communicating directly back and forth with the girls. We have also recognized that new technology is of critical importance to improving the ability of our fans to interact directly with us in new and unique ways.

12.    In order to utilize and grow these new and emerging forms of communication, Kourtney, Kim and Khloe have worked almost every day over the past several years communicating with their fans and the public via social media, and introducing their fans to new technological advances that are both fun and informative.

13.    As a result of all this time and dedication to the use of social media, the number of fans with whom the girls have direct relationships has grown dramatically over the years. This direct relationship with their fans has been recognized by many retailers who want to work with us.

14.    According to Instagram, Kim has around 77.5 million followers on Instagram, Khloe has around 52 million, and Kourtney has about 43.6 million.

15.    According to Twitter, Kim has around 46.8 million followers on Twitter, Khloe has around 21.3 million, and Kourtney has about 20.3 million.

16.     According to Facebook, Kim's official Facebook page has around 28.9 million "likes" on Facebook, Khloe has around 17.5 million, and Kourtney has about 14.8 million.

17.     Here are a few examples of what the girls have accomplished in these digital areas. In 2015, Kim launched her mobile app game *Kim Kardashian: Hollywood*, which is one of the most-downloaded games in the history of the Apple iTunes store, peaking at the # 1 spot and dominating the Apple iTunes App Store charts in 2015. The success of Kim's mobile app was profiled on the cover issue of *Ad Week* and numerous other publications.

18.     In September 2015, Kourtney, Kim, and Khloe, along with their younger sisters Kendall and Kylie Jenner, all launched cutting edge mobile apps through Apple iTunes and the Apple App Store at a joint press conference held at Apple's flagship Manhattan store. Through these apps, Kourtney, Kim and Khloe are able to provide their own exclusive content directly to their fans without any intermediary at all.

19.     In December 2015, Kim had a very successful launch of her "Kimoji" app, which debuted at Number One in the Apple iTunes App Store chart on the day of its release. Kim's Kimoji's continue to be strong sellers on Apple's iTunes and on the Apple App Store.

## Additional Business Ventures

20.     Since they were little girls, Kourtney, Kim and Khloe have always been interested in fashion, clothes, and beauty products, which is why they were excited in 2012 to license their name to what we were promised was a well-funded and well-managed new line of color cosmetics. They have also branched out into other lines.

21.     Using the KARDASHIAN BEAUTY trademark first used for cosmetics, Kourtney, Kim and Khloe in 2015 entered into a licensing agreement with a company for a line of hair care products, which are available at different

1  retailers including Target and Ulta Beauty, and also available online at

2  *http://www.kbeautyhaircare.com/*

3      22.    In 2006, Kourtney, Kim and Khloe opened a boutique clothing store in

4  Los Angeles called "DASH," which they operate. Today, DASH is a boutique

5  clothing and accessory chain with three retail stores located in Los Angeles,

6  Miami Beach, and New York. DASH also has a well-developed online store at

7  *https://shopdashonline.com/*

8      23.    The girls' interest in fashion also lead them to develop, design and

9  launch different clothing lines, including *Kardashian Kollection* and *Kardashian*

10  *Kids*, which are sold through various retailers and online.

11      24.    Over the years, the girls have published several books. Most recently in

12  November 2015, Khloe published her first solo book which was in the top 10 of the

13  Apple iTunes book charts for eight weeks. Earlier in 2010, Kourtney, Kim and

14  Khloe through St. Martin's Press published their biography *Kardashian*

15  *Konfidential*, and in 2011, they together published a novel with HarperCollins, titled

16  *Dollhouse*.

17      **The Harm that will Result if the Girls' Names are Used without Permission**

18      25.    Once agreements are signed with third parties, Kourtney, Kim and

19  Khloe are all actively involved in promoting the brands and products, and making

20  sure that the products and services meet their strict specifications for "Kardashian"

21  brand products and services. As a result of all this hands-on experience over the

22  years, I have a very strong sense of what works and what does not work, and what

23  builds the girls' brands and what harms them.

24      26.    The "general counsel" for the past five years for our family has been

25  Todd Wilson. Earlier this year, Todd, and to a lesser extent I, had conversations with

26  Sean McAvoy and Neal Kaufman from Hillair Capital about how Hillair would fund

27  Haven Beauty so that it could operate and manage the Kardashian Beauty brand

28  going forward. Todd and I told them that Hillair and Haven Beauty need to pay

1    Kourtney, Kim and Khloe the monies that are owed under the License Agreement,

2    most notably the substantial attorneys' fees and costs incurred by the girls in two

3    separate lawsuits filed against them in connection with the sale of products under

4    the License Agreement.

5         27.    When Hillair and Haven did not pay what is owed under the License

6    Agreement, our attorneys sent a letter terminating the License Agreement on July 8,

7    2016. On that same day, after we had terminated the License Agreement, Haven

8    Beauty launched a new product line called "Fierce" with the trademark

9    KARDASHIAN BEAUTY (according to what was posted on the internet).

10   I understand that Haven Beauty appeared at the "Beautycon" event held at the

11   Convention Center in downtown Los Angeles on July 9, 2016 to advertise and

12   promote the new, unauthorized "Fierce" product line. I also understand that Haven

13   Beauty entered into some type of arrangement with another company for the

14   "YouCam Makeup App" that allows users to "virtually" try on new products from

15   the "Fierce" product line.

16        28.    Kourtney, Kim and Khloe did not approve the "Fierce" products being

17   promoted and sold by Haven Beauty under the Kardashian Beauty brand—nor did I.

18   Nor did we approve the use of the girls' trademarks, names, likenesses and images

19   in connection with the "YouCam Makeup app."

20        29.    Outside of their television ventures, the primary business of Kourtney,

21   Kim and Khloe revolves around the licensing of their trademarks, names, likenesses

22   and images under limited circumstances they control. We work very hard to ensure

23   that the Kardashian brand means something to their fans and to the public, who view

24   the use of our names as the stamp of approval by us. If another company is allowed

25   to use these trademarks, names, likenesses and images without our permission, or in

26   instances where we have withdrawn our permission, then Kourtney, Kim and Khloe

27   will lose a very valuable right which, as explained above, we all have worked hard

28   over the years to build and grow.

30.    We have terminated Haven Beauty's right to use Kourtney, Kim and Khloe's trademarks, names, likenesses and images, and we respectfully request that our termination be followed. Otherwise, I believe as their manager that the name recognition and goodwill that Kourtney, Kim and Khloe have built over the years with their loyal fans and with the public will be substantially hurt and it may not be possible to regain the same degree of trust that existed before Haven Beauty's actions.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my personal knowledge.

Executed on July 21, 2016, in Los Angeles, California.

Kris Jenner

## <u>DECLARATION OF TODD WILSON</u>

I, Todd Wilson, declare as follows:

1.     Unless stated otherwise, I have personal knowledge of the following facts, and I could and would testify competently to such facts under oath.

2.     I am personal legal counsel for Kourtney and Khloe Kardashian, and Kim Kardashian West, along with their respective loan-out corporations, 2Die4Kourt, Khlomoney, Inc., and Kimsaprincess, Inc. (the "Kardashian Corporations"), all of whom are named as Plaintiffs in this action. I have served in this role since 2011.

3.     In this Declaration, I refer collectively to the three Kardashian sisters and their loan-out corporations as the "Kardashians." When referring to the Kardashian sisters individually in this Declaration, I refer to them by their first name to avoid confusion (and not out of disrespect for the Court). I also refer to Defendant Haven Beauty, Inc. as "Haven," and Defendants Hillair Capital Management LLC and Hillair Capital Investments LP as "Hillair."

4.     I am filing this Declaration in support of the Kardashians' Motion for Preliminary Injunction.

### <u>The License Agreement Dated May 9, 2012</u>

5.     I was one of the principal negotiators on behalf of the Kardashians in connection with the Licensing Agreement dated May 9, 2012 (the "License Agreement"), and I am familiar with its terms. (Attached hereto as **Exhibit 1** is a true and correct copy of the License Agreement.)

6.     <u>Grant of Kardashian Image License</u> – In the License Agreement, the Kardashians granted an exclusive license to third party Boldface Licensing + Branding ("Boldface") to design, manufacture, and distribute cosmetics sponsored and endorsed by the Kardashians. The License Agreement granted the Licensee the exclusive right to use the "Kardashian Image" in connection with the sale of cosmetics—the term "Kardashian Image" being defined as "the trademark

'Kardashian' and each Kardashian's name, fame, nickname, initials, autograph, voice, video, film portrayals or performances, photograph . . . likeness and image or facsimile image, and any other likeness of, or means of endorsement by, each Kardashian." (Ex. 1, ¶ 1(A).)

7.   <u>Prior Approval</u> – The License Agreement granted an exclusive license to use the Kardashians' trademarks, names, likenesses and images for use in connection with the development and sale of color cosmetic products, so long as all such uses are first approved in writing by the Kardashians. This requirement is set forth in paragraph 7 of the License Agreement, which states:

<u>Prior Approval</u>. The Licensors shall be entitled to approve, as well as disapprove, of any images, live action footage or other uses of the Kardashian Image that would in the Licensors' or Kardashians' sole judgment impair the value and marketability of the Kardashian Image or subject the Kardashians to public ridicule or scorn. Additionally, Licensee agrees that no use of the Kardashian Image or any item used in connection therewith, and any other means of endorsement by the Kardashians will be made hereunder without the written approval of Licensors prior to any public release. The Licensors shall provide Licensee specific grounds for any disapproval within seven (7) business days of the Licensors' receipt of an intended use of the Kardashian Image. Any items or matters submitted to the Licensors for their approval which are not disapproved within seven (7) business days after the Licensors' receipt thereof shall be deemed approved hereunder. The Licensors' approvals pursuant to this Agreement shall not be withheld unreasonably and

2

1        Licensors shall cooperate with Licensee in connection

2        with the approval of any items or matters hereunder.

3        (Ex. 1, ¶ 7, p. 21.)

4        8.    <u>Remuneration</u> – In consideration for the License Agreement, the

5  Licensee agreed to pay the Kardashians the following: (a) a royalty ranging from 8-

6  10% on wholesale sales (¶ 5(A)); (b) a non-refundable advance (¶ 5(B)); and (c) a

7  "guaranteed minimum royalty" ("GMR"), which was split into several payments to

8  occur at different times during the term of the License Agreement.

9        9.    Since the execution of the License Agreement in May 2012 to the date

10  of this declaration, the initial non-refundable advance is the only payment the

11  Kardashians have ever received under the Licensee Agreement from the original

12  Licensee (Boldface) or its successor, Haven Beauty and Hillair.

13       10.   <u>Kardashians' Agreement to Promote</u> – In the License Agreement, the

14  Kardashians agreed to promote the licensed cosmetics line through photo shoots,

15  personal appearances, and social media. License Agreement. (Ex. 1, ¶ 4.) However,

16  all of these obligations were expressly conditioned on the Licensee's timely

17  payment of royalties and the GMR, as well as the Licensee's compliance with other

18  requirements in the License Agreement. (Ex. 1, ¶ 4(C)(vi), p. 12 ("The obligations

19  of the Licensors to provide the services of Kardashians hereunder are subject to the

20  condition that payments to the [Kardashians] (which are not then the subject of a

21  good faith dispute by Licensee) are current and up to date and Licensee is not

22  otherwise in material breach of any provision of this Agreement.").)

23       11.   <u>Indemnification</u> – Paragraph 14(C) provides for the Licensee, to

24  indemnify the Kardashians from "all claims of third parties (and liabilities,

25  judgments, penalties, losses, costs, damages and expenses resulting therefrom,

26  *including reasonable attorneys' fees and costs*) … arising from (i) the production,

27  distribution, or other use by Licensee of the Kardashian Image in connection with

28  Products pursuant to this Agreement … [and] (iii) the development, manufacture,

1  distribution, marketing, promotion, sale, or other exploitation of the Products …."

2  (Ex. 1, ¶ 14(C).)

3       12.    <u>Termination</u> – The License Agreement entitles the Kardashians to

4  terminate in the event of a material breach, including if the licensee "fails in any

5  obligation to make timely payments . . . and any such payment is not received within

6  ten (10) business days after Licensee's receipt of the written notice of such failure,"

7  or if it "breaches any other material term of this Agreement, which breach Licensee

8  has failed to cure within thirty (30) days after [its] receipt of the [Kardashians']

9  written notice of such breach." (Ex. 1, ¶ 11.)

10      13.    <u>No Right to Use Image upon Expiration or Termination</u>. Paragraph 13

11  of the License Agreement states:

12            Licensee acknowledges and agrees that upon and after the

13            expiration or earlier termination of this Agreement, it shall

14            not be entitled to, and shall not, make use of or deal with

15            any of the rights granted by the [Kardashians] herein

16            including right to use the Kardashian Image, or any print

17            advertisements, other advertising or promotional or other

18            materials (or any parts or portions thereof) that contain the

19            Kardashian Image, in any manner whatsoever …. (Ex. 1,

20            ¶ 13, p. 27.)

21        **The Trademarks for KARDASHIAN BEAUTY and Each Sister**

22      14.    Beginning in around May 2014, the original Licensee, Boldface, began

23  selling Kardashian-sponsored products under the brand name "Kardashian Beauty."

24  The Kardashian Corporations are the owner of the standard character mark,

25  KARDASHIAN BEAUTY, USPTO Reg. No. 4,909,148 ("the Kardashian Beauty

26  Mark"). The Kardashian Beauty Mark was registered on the Principal Register on

27  March 1, 2016 in International Class 3 for use in connection with cosmetics,

28  cosmetic preparations, eye shadow, eye liner, foundation, face powders, blush, facial

highlighter, mascara, false eyelashes, body powders, lipstick, lip gloss, cosmetic palettes, namely, compacts containing make-up, and body makeup. (Attached hereto as **Exhibit 23** is a true and correct copy of the registration.)

15.     The Kardashian Corporations are the owner of the standard character mark, KARDASHIAN, USPTO Reg. No. 4,509,292. That mark was registered on the Principal Register on April 8, 2014 in International Class 35 for use in connection with advertising services, namely, promoting the brands, goods and services of others; endorsement services, namely, promoting the goods and services of others. (Attached hereto as **Exhibit 24** is a true and correct copy of the registration.)

16.     Plaintiff 2Die4Kourt is the owner of the standard character mark, KOURTNEY KARDASHIAN, USPTO Reg. No. 4,516,081 ("the Kourtney Mark"). The Kourtney Mark was registered on the Principal Register on April 15, 2014 in International Class 35 for use in advertising services, namely, promoting the brands, goods and services of others; endorsement services, namely, promoting the goods and services of others. (Attached hereto as **Exhibit 25** is a true and correct copy of the registration.)

17.     Plaintiff Kimsaprincess, Inc., is the owner of the standard character mark, KIM KARDASHIAN, USPTO Reg. No. 3,919,997 ("the Kim Mark"). The Kim Mark was registered on the Principal Register on February 15, 2011 in International Class 3 for use in cosmetics. (Attached hereto as **Exhibit 26** is a true and correct copy of the registration.)

18.     Plaintiff Khlomoney, Inc., is the owner of the mark, KHLOE KARDASHIAN, USPTO Reg. No. 4,516,080 ("the Khloe Mark"). The Khloe Mark was registered on the Principal Register on April 15, 2014 in International Class 35 for use in advertising services, namely, promoting the brands, goods and services of others; endorsement services, namely, promoting the goods and services of others. (Attached hereto as **Exhibit 27** is a true and correct copy of the registration.)

19.    The foregoing registered marks are referred to collectively as the "Registered Marks."

**Hillair Takes Over the License Agreement and Kardashian Beauty Brand**

20.    When the original licensee (Boldface) ran into financial problems because of litigation expenses (described below), Hillair, a hedge-fund located in Northern California, agreed in June 2013 to loan money to Boldface in the form of secured convertible debt. Additional loans were made in March 2014 (when Hillair's debt was converted to preferred equity) and in the summer of 2014.

21.    When Boldface's fortunes did not improve, Hillair in September 2014 sued Boldface in Los Angeles County Superior Court, and obtained an order appointing a receiver who was authorized to sell the assets of Boldface, the most notable and valuable of which was the License Agreement.

22.    In the receivership proceeding, Hillair presented the winning bid and in October 2014 was awarded the assets of Boldface, including the License Agreement, which was purchased by Hillair "as is." One of Hillair's principals, either Sean McAvoy or Neal Kaufman, informed me that Hillair assigned the License Agreement to "Newco Beauty Company, Inc.," a Delaware shell company wholly owned by Hillair. Newco Beauty then changed its name to Haven Beauty, Inc., one of the Defendants in this case.

**Relationship Between Hillair and Haven Beauty**

23.    I have had many communications with Hillair and its principals, Mr. McAvoy and Mr. Kaufman, since Hillair first got involved in 2013, and the frequency of those communications increased after Hillair purchased the License Agreement in October 2014. Mr. McAvoy and Mr. Kaufman have made it clear to me that they are intimately involved in the day-to-day and long term management and operations of Haven Beauty.

**<u>Operation of Kardashian Beauty by Haven Beauty and Hillair</u>**

24.     In August 2014, I had discussions with Mr. McAvoy and Mr. Kaufman about how they would operate and management Kardashian Beauty if they were to take it over. In connection with those discussions and as a prelude to the transition from Boldface to Hillair, the Kardashians and Hillair entered into certain documents.

25.     Hillair and the Kardashians entered into a term sheet regarding "Newco Beauty Company Offering of New Equity" (the "Term Sheet"). (Attached hereto as **Exhibit 28** is a true and correct redacted copy of the Term Sheet.) Among the conditions set forth before closing could occur on August 1, 2014 were the following: (a) executing certain amendments to the existing and operative License Agreement; (b) paying a settlement in a trademark infringement action and obtaining a release for the Kardashians and Boldface in that action; (c) acquiring "free and clear title to the License Agreement"; and (d) paying the Kardashians' and Boldface's legal fees in the trademark infringement action. (*Id.*, pp. 1-2.)

26.     Certain conditions in the Term Sheet were never finalized and as a result, the Kardashians and Hillair and Haven Beauty, continued to be bound by the terms of the License Agreement, without amendment thereto. Haven has itself asserted in an email from its CFO, Jeanene Morgan, that the Term Sheet is not binding because various of its "terms and circumstances" were "not satisfied." (Attached hereto as **Exhibit 29** is a true and correct copy of Ms. Morgan's email.)

27.     In August 2014, after executing the Term Sheet, Hillair and the Kardashians executed another agreement (the "Settlement Agreement"). (Attached hereto as **Exhibit 30** is a true and correct redacted copy of the Settlement Agreement.) Among other things, Hillair and its subsidiaries and affiliates released "fully and forever" the "Kardashian Discharged Parties" from "any and all Claims and Obligations, of whatever kind or nature, in law, equity or otherwise, whether known or unknown, concealed or hidden, which any of the Hillair Releasing Parties

has had, may have had, now has, or hereafter can, shall or may have" arising out of or related to "(a) the License Agreement and the subject matter thereof, (b) Boldface and its business, and/or (c) the Settlement Agreement and the subject matter thereof, including without limiting the generality of the foregoing, any Claims and Obligations which were, might or could have been asserted in connection with Hillair's involvement or investment in Boldface and its business." (*Id.* p. 2 § 1.)

28.     Around the time that Hillair and Haven Beauty stepped into the shoes of Boldface in mid-2014, the then CEO of Haven Beauty, John LeBonty, brought to my attention a couple of possible investors who, he reported, were prepared to invest a very substantial amount of capital in the Kardashian Beauty brand. Although those investors did not end up purchasing the assets from Boldface in the receivership proceeding, Mr. LeBonty, with permission of me and the Hillair principals, Mr. McAvoy and Mr. Kaufman, continued to have discussions with those possible investors after Haven Beauty took over the Kardashian Beauty brand. All parties were hopeful one of these investors would step in and take over the Kardashian Beauty brand because that would have allowed Hillair to fully recoup its investment, and it would have given the brand substantially more working capital than Hillair was prepared to put into Haven Beauty.

29.     Hillair and Haven Beauty, and their principals Mr. McAvoy and Mr. Kaufman, fully supported these efforts to find a new investor. After Mr. LeBonty left the employ of Haven Beauty, I took over the negotiations with these investors, and with the knowledge and blessing of Mr. McAvoy and Mr. Kaufman, I devoted a substantial amount of my time for many months trying to bring those negotiations to fruition. Unfortunately, by the end of 2015, it became clear that those investors would be unable to follow through and make the necessary commitments.

30.     As a result, in late 2015 and early 2016, I along with the Kardashians' manager, Kris Jenner, had discussions with Mr. McAvoy and Mr. Kaufman about

1   how Hillair would fund Haven Beauty so that it could operate and manage the

2   Kardashian Beauty brand going forward. We told them that Hillair and Haven

3   Beauty needed to pay to the Kardashians the monies that are owed under the License

4   Agreement.

5   **Kardashians Demand and Receive Indemnification from the Licensee**

6   31.   Since entering into the License Agreement, the Kardashians have been

7   sued in two separate actions arising out of the licensee Boldface's sale and

8   promotion of cosmetic products pursuant to the License Agreement—the California

9   Action and the Florida Action.

10   32.   The California Action – On January 9, 2013, a Florida-based cosmetics

11   company filed claims against Boldface in federal court in Los Angeles for trademark

12   infringement, and also named the Kardashians in the suit (the "California Action").

13   In January 2013, the Kardashians made a written demand upon Boldface pursuant to

14   paragraph 14(C) of the License Agreement for indemnification in connection with

15   the California Action. Boldface agreed to indemnify and defend the Kardashians,

16   and Boldface signed a written agreement to pay the legal fees incurred and costs

17   advanced by the Kardashians' counsel of record in the California Action, the law

18   firm of Kinsella Weitzman Iser Kump & Aldisert LLP ("KWIKA").

19   33.   In June 2014, the California Action was resolved by the Licensee

20   (Boldface) agreeing to pay, or cause to be paid, a settlement payment to the Florida

21   cosmetics company. The Kardashians were not required to pay any of this

22   settlement amount.

23   34.   The Licensee (Boldface) regularly paid the Kardashians' attorneys'

24   fees in the California Action until Boldface ran into financial problems because of

25   litigation costs. As a result, there is still a substantial sum due and owing to the

26   Kardashians to indemnify them in connection with the California Action pursuant to

27   paragraph 14(C) of the License Agreement. To date, Hillair and Haven have refused

28

1  to pay the remaining unpaid legal fees and costs owed to the KWIKA law firm in

2  connection with the California action.

3       35.    <u>The Florida Action</u> – On September 24, 2014, during the pendency of

4  the receivership proceeding for Boldface, the European distributor of the Florida

5  cosmetics company filed an action against Boldface in federal court in Orlando,

6  Florida for trademark infringement, and also named the Kardashians in the suit

7  (the "Florida Action").

8       36.    On September 30, 2014, I, on behalf of the Kardashians, served a

9  written demand for indemnification of the Florida Action upon the Licensee at that

10  time, *i.e.*, the Receiver appointed by the court in the Boldface receivership

11  proceeding. The Florida Action is still pending. The Kardashians are being

12  represented in the Florida Action by Kinsella Weitzman Iser Kump & Aldisert LLP

13  of Santa Monica ("KWIKA") and by local counsel Pearson Bitman LLP of Orlando

14  ("Bitman").

15       37.    I am informed that Newco Beauty paid the invoices for the Bitman firm

16  in the Florida Action starting with the December 2014 invoice, and that Haven paid

17  the invoices for the Bitman firm starting in March 2015 with the last payment made

18  in December 2015. To date, Hillair and Haven have refused to pay any legal fees

19  owed to the KWIKA law firm for legal serviced rendered on behalf of the

20  Kardashians in connection with the Florida Action.

21             **<u>Hillair Responds to Kardashians' Notice of Breaches</u>**

22             **<u>by Preemptively Suing the Kardashians in State Court</u>**

23

24       38.    On February 26, 2016, the outside attorneys for the Kardashians served

25  a Notice of Breach and Opportunity to Cure under the License Agreement.

26  (See **Exhibit 2** attached to the Declaration of Michael J. Kump ("Kump

   Declaration").)

27

28

DECLARATION OF TODD WILSON

39.     On March 21, 2016, without warning, Hillair filed suit against the Kardashians in the Los Angeles County Superior Court for alleged breaches of the License Agreement—even though the License Agreement requires that "all claims, disputes and other matters arising out of or relating to this Agreement shall be submitted to, and determined by, binding arbitration" with JAMS "if the Parties are unable to settle the matter through good faith negotiations within 30 days of the date from which such claim, dispute or matter arose." (Ex. 1, ¶ 27 (A), p. 30.) Neither Hillair's principals nor its lawyers ever contacted me or our lawyers to engage in good faith negotiations about their grievances before filing suit.

40.     On April 1, 2016, the Kardashians' counsel gave further notice to Hillair's counsel of additional breaches under the License Agreement and provided an opportunity to cure. (See **Exhibit 5** attached to the Kump Declaration.)

### **The Kardashians Initiate a JAMS Arbitration Against Hillair and Haven**

41.     On April 11, 2016, the Kardashians instituted a JAMS arbitration against Haven and Hillair to recover damages for a number of breaches under the License Agreement and for promissory fraud. (See **Exhibit 6** attached to the Kump Declaration.)

### **The Kardashians Attempt to Resolve the Parties' Issues**

42.     After the filing of the Superior Court Action and the Kardashians' arbitration, Kris Jenner and I tried to communicate with Mr. McAvoy and Mr. Kaufman to discuss a resolution of the parties' issues. When we finally spoke, I understood that an agreement had been reached to place all litigation on hold while a resolution was discussed. Not long after that, however, Hillair through its lawyers made new demands that must be met before any further discussions could take place. Even after I agreed to meet many of the demands, Mr. McAvoy and Mr. Kaufman stopped communicating with us.

**The State Court Grants the Kardashians' Motion to Compel Arbitration**

43.　On May 11, 2016, the Kardashians filed their response to Hillair's complaint in the Superior Court Action, which consisted of a motion to compel arbitration and to stay the action pending the arbitration. On June 24, 2016, the Superior Court, the Hon. Richard L. Fruin, Jr. presiding, granted the Kardashians' motion to compel arbitration and stayed the case in its entirety. As a result, all claims in the Superior Court Action have now been compelled to a JAMS arbitration. (See **Exhibit 10** to the Kump Declaration.)

**Kardashians Recently Refuse Approval of New Cosmetic Line**

44.　On May 12, 2016, I received an email from Jeanene Morgan, Haven's CFO, asking about addresses for the Kardashians to send new product samples for the Kardashians' approval. (Attached hereto as **Exhibit 31** is a true and correct redacted copy of Ms. Morgan's email.)

45.　I was surprised by the email given that Mr. McAvoy and Mr. Kaufman did not want to discuss the future of the brand. In fact, Haven and Hillair had not sent new product samples to the Kardashians to approve in a very long time. On May 12, 2016, I responded to Ms. Morgan in part as follows:

> Thank you for the email below. However, I must say that we are puzzled by this as Sean and Neal made very clear earlier this week that they were no longer interested in even discussing further development of the brand. We reached out to them several times to discuss options for the brand and they refused to talk and their litigator – who is also your/Haven's litigator – has been making public statements calling the Kardashians liars. We can only interpret your request as part of some litigation strategy. You are free to send samples of the products … However, the K[ardasians]s will not approve anything, or consider

1          approving anything until Haven/Hillair is no longer in

2          breach of its obligations under the contract." (Ex. 31.)

3      46.      Haven Beauty sometime later sent some product samples to the

4 Kardashians, with forms expressly seeking the Kardashians' written approval of the

5 products. With the approval forms, Haven explained that it had "developed" new

6 lines of Kardashian Beauty Products called "Summer Squad" and "Fierce."

7      47.      On May 27, 2016, I emailed Ms. Morgan explaining that the

8 Kardashians were not approving any of these new products: "I want to acknowledge

9 that I received the deliveries per your email below. Under the circumstances, I need

10 to reiterate that due to the uncured breaches of Hillair and Haven detailed in our

11 prior emails and letters, my clients are not required to provide any services, which

12 includes reviewing products for approval/disapproval. As such, please keep in mind

13 that their 'silence' is not and should not be deemed approval or consent." (Ex. 31.)

14      48.      At no time after I sent these emails to Ms. Morgan in May 2016 did she

15 or anyone else at Haven Beauty or Hillair tell me or any of the Kardashians that

16 Haven Beauty and Hillair were ignoring the Kardashians' disapproval and were

17 planning to go forward with the "Fierce" and "Summer Squad" lines.

18                  **The Kardashians Terminate the License Agreement**

19      49.      On June 22, 2016, the Kardashians made one final effort to seek Hillair

20 and Haven's compliance with the License Agreement. Pursuant to paragraph 11 of

21 the Agreement, the Kardashians through their outside counsel gave notice of their

22 intent to terminate the License Agreement in ten (10) business days unless Hillair

23 and Haven cured their breaches by paying all amounts due to the Kardashians under

24 the License Agreement. (See **Exhibit 8** attached to the Kump Declaration.)

25      50.      In the June 22 letter, the Kardashians sought payment of all outstanding

26 legal fees and costs pursuant to the indemnity obligations under the License

27 Agreement. Separate and apart for those payments, the Kardashians also sought

28 payment of all royalties due to the Kardashians under the License Agreement. In

1  recognition of the dispute over whether any "Guaranteed Minimum Royalties" were

2  due under the License Agreement, the June 22 letter only demanded that actual

3  earned royalties be paid within the cure period.

4        51.    On June 24, 2016, the Kardashians sent a separate Notice of Breach

5  and Opportunity to Cure to Hillair and Haven concerning their unauthorized uses of

6  the "Kardashian Image," and provided them with 30 days to cure such breaches, as

7  required under the License Agreement. (See **Exhibit 9** attached to the Kump

8  Declaration.)

9        52.    Ten business days from the June 22, 2016 breach letter was July 7,

10  2016. During this time period, no one from Hillair or Haven Beauty contacted me or

11  any of the Kardashians to discuss any of the breaches set forth in the June 22 or June

12  24 letters.

13        53.    On July 7, 2016, the last day of the cure period, we heard through

14  various sources that Hillair and Haven Beauty were planning to launch a new

15  product line the next day, and also appear at the upcoming beauty convention

16  "Beautycon" at the LA Convention Center. The Kardashians' outside counsel sent a

17  letter that day at approximately 10:50 a.m. PDT demanding that Hillair and Haven

18  Beauty cease and desist from such unauthorized activities. (See **Exhibit 11** attached

19  to the Kump Declaration.)

20        54.    On July 7, 2016, just before 6:00 p.m. PDT, litigation counsel for

21  Hillair and Haven Beauty sent a letter saying that they would not cure their breaches

22  and would not pay royalties under the License Agreement, unless the Kardashians

23  first compensated them for supposed damages they claim they are owed in the now-

24  stayed Superior Court Action. (See **Exhibit 12** attached to the Kump Declaration.)

25  (Plaintiff's Ex. 12.)

26        55.    On July 8, 2016, at 12:08 a.m. PDT, the Kardashians sent written

27  notice via email terminating the License Agreement, effective immediately. (See

28  **Exhibit 13** attached to the Kump Declaration.) The Kardashians demanded, among

1    other things, that, pursuant to paragraph 13 of the License Agreement, Hillair and

2    Haven Beauty immediately stop using the Kardashian Image (i.e., all images and

3    trademarks of the Kardashians, all uses of the Kardashian name, etc.).

4              **Hillair and Haven Beauty, After Termination,**

5       **Launch New Products Which Were Not Approved by The Kardashians**

6         56.    According to multiple press reports, on July 8, 2016, Hillair and Haven

7    Beauty launched via the internet and the national press the new "Fierce" line of

8    cosmetic products bearing the Kardashians' trademark—"Kardashian Beauty."

9    This was the product line that I had expressly told Ms. Morgan on May 12 and May

10   27, 2016, was not approved by the Kardashians.

11        57.    Attached hereto as **Exhibit 32** are true and correct copies of internet

12   articles discussing the launch of this "Fierce" line of Kardashian Beauty products.

13   These articles attribute the products to Kim, Khloe, and Kourtney Kardashian, as

14   though they are behind the entire launch. One of the attached articles, for example,

15   is headed: "An Honest, Unbridled Review Of The Kardashians' Brand-New 'Fierce'

16   Makeup Collection." Another from the Daily Mail website is headed: "Kim, Khloe

17   and Kourtney Kardashian are launching their own contouring palette …."

18        58.    Hillair and Haven Beauty also announced and promoted this new

19   product launch through the Kardashian Beauty website (kbeauty.com), and on the

20   official pages of Kardashian Beauty on Instagram, Facebook and Twitter. These

21   announcements included unapproved pictures of Kim, Kourtney and Khloe, and/or

22   abundant use of the trademark "Kardashian Beauty." True and correct copies of

23   screenshots showing examples of these promotions are attached hereto as **Exhibit**

24   **33**.

25        59.    I am also informed from various sources, including people who saw

26   this first-hand, that at the beauty convention called "Beautycon" held at the LA

27   Convention Center on Saturday, July 9, 2016, representatives from Haven Beauty

28   appeared in a booth to promote the new "Fierce" line of cosmetics. Attached hereto

as **Exhibit 34** are true and correct copies of an Instagram post, photographs, and an article evidencing the promotion of the unauthorized Kardashian Beauty products at "Beautycon."

60.    None of these foregoing activities were approved of by me, or any of the Kardashians, or any of their other representatives.

**Hillair and Haven Beauty, Without Notice or Approval, Collaborate with an Outside Company to Launch the "YouCam Makeup app"**

61.    On the last day of the cure period, July 7, 2016, we heard through various sources that Haven Beauty and Hillair had entered into some type of arrangement with a third-party company for use of the Kardashians' trademarks, names, likenesses and images in connection with the "YouCam Makeup app." As a result, the Kardashians' outside counsel sent a letter to opposing counsel demanding they cease and desist in any such activities. (See **Exhibit 11** attached to the Kump Declaration.) That July 7 letter from our lawyers stated in part: "Yesterday, we learned for the first time that you are planning on Friday, July 8, 2016 to launch the 'NEW Kardashian Beauty line' including a new 'Fierce' line of Kardashian Beauty Products. Furthermore, we understand that you are planning a booth at BeautyCon Los Angeles where 'guests will have the opportunity to virtually try on the NEW Kardashian Beauty Collection (launching tomorrow) via the award-winning YouCam Makeup app.'" (*Id.*)

62.    I have since learned that on July 8, 2016—the day on which the Kardashians terminated the License Agreement at 12:08 a.m. PDT—a press release was issued touting the new YouCam Makeup App. (Attached hereto as **Exhibit 35** is a true and correct copy of the press release concerning YouCam Makeup App.) The press release's headline is: "Perfect Corp. Announces Collaboration with Celebrity Makeup Brand Kardashian Beauty® in YouCam Makeup App" The press release states in part:

1       Today, Perfect Corp. and Kardashian Beauty announce

2       their collaboration that invites You Cam Makeup users to

3       try on products from the newly released "Fierce"

4       collection. Beauty lovers and Kardashian fans alike can

5       instantly experience Kardashian Beauty trends with the

6       snap of a selfie in the world's #1 makeup app. Contour,

7       sculpt, and highlight in seconds just like Kourtney, Kim

8       and Khloé by sampling contour palettes, eye shadows,

9       lipsticks, and more! Fans can even instantly try out each of

10      the girl's complete makeup styles in YouCam Makeup

11      with one of the custom Kardashian Beauty filters. (Ex.

12      35.)

13  The July 8 press release includes the following statement from a Haven Beauty

14  representative:

15      "Kardashian Beauty is always looking for new ways to

16      engage and inspire our community," said Erin Dwyer,

17      SVP, Global Ecommerce, Kardashian Beauty. "YouCam

18      Makeup offers our social and mobile glam girls the ability

19      to try on our new suite of fierce products in a fun and easy

20      way. They can 'fierceify' any selfie, try out lipsticks

21      virtually to decide which color they are looking for, and

22      most importantly feel more confident in their purchase

23      decision. We are beyond excited to be giving this new

24      YouCam Makeup augmented reality experience to our

25      fans." (Ex. 35.)

26      63.   I negotiated the License Agreement in 2012 on behalf of the

27  Kardashians. Prior to my working with the Kardashians, I had the same legal

28  practice for other high-profile celebrities for over 14 years. In that period of time

1  and up to today, I have negotiated many license agreements. I know from

2  experience that the grant of rights and the scope of the license are among the most

3  important features of any license agreement for well-known celebrities who are

4  licensing their trademarks, names, likenesses and images.

5        64.    The License Agreement at issue here does not license to the Licensee,

6  in this case, Hillair and Haven Beauty, any digital rights whatsoever. This was a

7  conscious decision by the Kardashians in 2012 because even then, the digital world

8  was exploding and digital rights were extremely valuable. Thus, it is my opinion

9  that Hillair and Haven Beauty do not have the right under the License Agreement to

10  enter into the collaboration or agreement with Perfect Corp. to use the Kardashians'

11  trademarks, names, likenesses and image in connection with any "app."

12        65.    Furthermore, separate and apart from the issue of whether Hillair and

13  Haven Beauty have the right to do this, at no time did they ever talk with me or any

14  other Kardashian representative, or with Kim, Kourtney or Khloe, about teaming up

15  with Perfect Corp. for the YouCam Makeup App. The Kardashians never were

16  asked to, nor did they give their approval for such digital use of their trademarks,

17  names, likenesses and images.

18      **Hillair and Haven Beauty Are Misleading the Kardashians' Fans**

19        66.    As stated in the Declarations of Kourtney, Kim and Khloe filed in

20  support of this motion for preliminary injunction, the relationship between the

21  Kardashians and their fans is very special and has been built up through hard work

22  over the years. This is one of the primary reasons why the actions of Hillair and

23  Haven Beauty selling and promoting unauthorized products, and doing so after their

24  right under the License Agreement has been terminated, is so harmful to the

25  Kardashians.

26        67.    A good example of this harm can be found in the quotes from Haven

27  Beauty in a recent article about the new product launch, a true and correct copy of

28  which is attached hereto as **Exhibit 36**. In that article entitled "Kardashian Beauty's

DECLARATION OF TODD WILSON

Fierce Makeup Launch Keeps Up With the Famous Family," published in Women's Wear Daily (WWD) on July 11, 2016—three days after the Kardashians terminated the License Agreement—Erin Dwyer, senior vice-president of global e-commerce and social media for Haven Beauty is quoted at length. The article states in part:

> The Fierce collection is a reset of sorts for Kardashian Beauty. Haven Beauty took over the license for the brand in 2014 after former licensee Boldface went into receivership. Haven Beauty's management of Kardashian Beauty has been clouded by a lawsuit filed by its principal investor Hillair Capital Management in March accusing Kim, Khloé and Kourtney Kardashian of failing to support the brand and seeking damages up to $180 million. The legal proceedings were subsequently stayed, and the parties were compelled to arbitrate.
>
> [¶] Dwyer suggested the lawsuit didn't stop Haven Beauty from pushing forward with Kardashian Beauty. "If you met anyone that works at the company, we work hard everyday. That's all we want to do. We work for our customers and for the brand to make sure what we offer has quality at a great price and is on trend. That's what we focus on, and we just keep our heads down," she said.
>
> [¶] At this point, it doesn't seem as if the Kardashians will be promoting the Fierce collection. Asked whether they would be making appearances on behalf of Kardashian Beauty, Dwyer said, "I can't speak to anything specifically." She elaborated, "The family is involved. They are aware of the license. They are aware of what we are doing." (Ex. 36, pp. 2-3.)

19

**The Unauthorized Actions of Hillair and Haven Threaten the Kardashians**

68.     The threat posed to the Kardashians by the unauthorized actions of Haven Beauty and Hillair in connection with the Kardashian Beauty brand are not theoretical. On July 14, 2016, the Kardashians' trademark counsel received by email a cease and desist letter from counsel for Abercrombie & Fitch ("A&F") who claims that A&F owns applications and registrations for the FIERCE mark for fragrances and lotions, and demands that Haven Beauty and Kardashian Beauty stop all uses of the FIERCE trademark in connection with beauty items. (Attached hereto as **Exhibit 37** is a true and correct copy of the July 14, 2016 cease and desist letter.)

69.     On July 15, 2016, the Kardashians' lawyers sent a cease and desist letter to counsel for Hillair and Haven, enclosing a copy of the A&F cease and desist letter, and demanding that Hillair and Haven immediately stop using the A&F mark in connection with the sale of Kardashian Beauty brand products. (See **Exhibit 19** attached to the Kump Declaration.)

70.     On July 18, 2016, Haven's counsel informed the parties that "our client has agreed to remove all references to the 'fierce line' and/or 'fierce collection' from its website, social media and other marketing materials." (See **Exhibit 20** to the Kump Declaration.)

71.     As of the date of this Declaration, it appears that the Kardashian Beauty website and social media pages are no longer promoting the "Fierce" Collection of Kardashian Beauty brand cosmetics, but are instead promoting a line of Kardashian Beauty color cosmetics called the "No Apologies" Collection. The "Fierce Collection" that Jeanene Morgan of Haven discussed in her May 2016 emails (see ¶¶ 43-47 above) included some products called "No Apologies® Face Kit," "No Apologies® Koncealer," and "No Apologies® Liquid Makeup." As explained above, neither the Kardashians nor I ever approved any of these products, and I expressly sent Ms. Morgan emails telling her the products were not approved. (See **Exhibit 31**.)

72.     This type of problem—where Haven has publicly promoted a line of Kardashian Beauty products that had been disapproved by the Kardashians, leading then to an allegation of trademark infringement—is precisely what can arise when the Kardashians' ability to control the use of their own trademarks, names, likenesses and images is taken away from them.

73.     The same is true of Haven Beauty and Hillair's unauthorized use of the Kardashians' names and images in connection with the YouCam Makeup app. A critical reason for the License Agreement's approval provisions is to allow the Kardashians and their counsel an opportunity to ensure that their names and likenesses are not being used in a way that conflicts with other deals they have made. In this instance, the Kardashians never licensed Haven Beauty digital rights of any kind. Thus, it has no right to make the deal that it made for the YouCam Makeup app. But the Kardashians *do* have deals with other companies relating to apps. Haven Beauty and Hillair are thus using the Kardashians' names, trademarks, and images without any clue, let alone regard, for whether the uses conflict with the Kardashians' other deals.

74.     The Kardashians and their brand will be tarnished and diminished in value, and the Kardashians will face potential exposure from third parties, if Haven Beauty and Hillair are allowed to continue to use the Kardashians' trademarks, names, images and likenesses despite the termination of the License Agreement and despite the absence of approval from the Kardashians.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my personal knowledge.

Executed on July 21, 2016 in Paradise Valley, Arizona.

_____
Todd Wilson

21
DECLARATION OF TODD WILSON

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

## <u>DECLARATION OF MICHAEL J. KUMP</u>

I, Michael J. Kump, declare as follows:

1.      I am an attorney duly admitted to practice before this Court. I am a partner with Kinsella Weitzman Iser Kump & Aldisert LLP ("KWIKA"), attorneys of record for Plaintiffs 2Die4Kourt, Kimsaprincess Inc., Khlomoney, Inc., Kourtney Kardashian, Kim Kardashian West and Khloe Kardashian. If called as a witness, I could and would competently testify to all the facts within my personal knowledge except where stated upon information and belief.

2.      Attached hereto as **Exhibit 2** is a true and correct copy of my February 26, 2016 letter to Hillair Capital Management, LLC, with the subject line "Notice of Breaches of Licensing Agreement dated May 9, 2012."

3.      Attached hereto as **Exhibit 3** is a true and correct copy of Gregory Fayer's March 21, 2016 letter to me, with the subject line "Hillair Capital Management LLC v. Kim Kardashian et al. (LASC Case No. BC614374)."

4.      Attached hereto as **Exhibit 4** is a true and correct copy of Mr. Fayer's March 31, 2016 letter to me, with the subject line "Licensing Agreement Dated May 9, 2012."

5.      Attached hereto as **Exhibit 5** is a true and correct copy of my April 1, 2016 letter to Mr. Fayer, with the subject line "Licensing Agreement dated May 9, 2012."

6.      On April 11, 2016, the Kardashians commenced a JAMS arbitration against Hillair and Haven. A three-member arbitration panel, consisting entirely of former federal judges affiliated with JAMS, has been appointed. The JAMS arbitration is pending. Attached hereto as **Exhibit 6** is a true and correct redacted copy of the Kardashians' Demand for Arbitration filed with JAMS.

7.      Attached hereto as **Exhibit 7** is a true and correct copy of Mr. Fayer's April 15, 2016 letter to me, with the subject line "Licensing Agreement Dated May 9, 2012."

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

8.      Attached hereto as **Exhibit 8** are true and correct copies of my June 22, 2016 cover letter to Mr. Fayer, along with my June 22, 2016 letter to Hillair Capital Management LLC, Hillair Capital Investments LP and Haven Beauty, Inc., with a cc to Mr. Fayer, with the subject line "Notice of Failure to Make Timely Payments Due Under the Licensing Agreement dated May 9, 2012." According to the cover email, both letters were emailed to Mr. Fayer at 1:44 p.m. PDT on June 22, 2016.

9.      Attached hereto as **Exhibit 9** are true and correct copies of my June 24, 2016 cover letter to Mr. Fayer, along with my June 24, 2016 letter to Hillair Capital Management LLC, Hillair Capital Investments LP and Haven Beauty, Inc., with a cc to Mr. Fayer, with the subject line "Notice of Breach of License Agreement and Demand for Cure." According to the cover email, both letters were emailed to Mr. Fayer at 1:49 p.m. PDT on June 24, 2016.

10.     Attached hereto as **Exhibit 10** is a true and correct copy of the Court's order entered on June 30, 2016 in the state court action granting the Kardashians' motion to compel arbitration and stay all proceedings

11.     Attached hereto as **Exhibit 11** is a true and correct copy of my July 7, 2016 letter to Hillair Capital Management LLC, Hillair Capital Investments LP and Haven Beauty, Inc., with a cc to Mr. Fayer, with the subject line "Demand that You Immediately Cease and Desist." According to the cover email, this letter was emailed to Mr. Fayer at 10:50 a.m. PDT on July 7, 2016.

12.     Attached hereto as **Exhibit 12** is a true and correct copy of Mr. Fayer's July 7, 2016 letter to me, with the subject line "Response to June 22, 2016 Notice of Failure to Make Timely Payments." According to my email inbox, this letter was received via email at 5:29 p.m. PDT on July 7, 2016.

13.     Attached hereto as **Exhibit 13** are true and correct copies of my July 8, 2016 email to Mr. Fayer at 12:08 a.m. PDT, along with my July 8, 2016 cover letter to Mr. Fayer, and my July 8, 2016 letter to Hillair Capital Management LLC, Hillair Capital Investments LP and Haven Beauty, Inc., with a cc to Mr. Fayer, with the

Kinsella Weitzman Iser Kump & Aldisert llp
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

1  subject line "Notice of Termination of the Licensing Agreement dated May 9, 2012,

2  Effective Immediately." Both letters were emailed to Mr. Fayer and received at

3  12:08 a.m. PDT on July 8, 2016.

4       14.    Attached hereto as **Exhibit 14** is a true and correct copy of my July 8,

5  2016 letter to Mr. Fayer, with the subject line "Demand that Hillair and Haven, and

6  the Individuals Directing Their Activities, Cease and Desist From Any Further

7  Violations of the Kardashians' Rights." According to the cover email, this letter was

8  emailed to Mr. Fayer at 12:17 p.m. PDT on July 8, 2016.

9       15.    Attached hereto as **Exhibit 15** is a true and correct copy of Mr. Fayer's

10  July 8, 2016 letter to me, with the subject line "Response to M. Kump July 7, 2016

11  Cease and Desist Letter." According to my email inbox, this letter was received via

12  email at 7:14 p.m. PDT on July 8, 2016.

13       16.    Attached hereto as **Exhibit 16** is a true and correct copy of Mr. Fayer's

14  July 8, 2016 letter to me, with the subject line "Response to M. Kump July 8, 2016

15  Notice of Termination and Cease and Desist." According to my email inbox, this

16  letter was received via email at 7:31 p.m. PDT on July 8, 2016.

17       17.    Attached hereto as **Exhibit 17** is a true and correct copy of Mr. Fayer's

18  July 11, 2016 letter to me, with the subject line "Notice of Breach and Tortious

19  Conduct." According to my email inbox, this letter was received via email at 6:45

20  p.m. PDT on July 11, 2016.

21       18.    Attached hereto as **Exhibit 18** is a true and correct copy of my July 12,

22  2016 letter to Mr. Fayer, with the subject line "Hillair Capital and Haven Beauty."

23  According to the cover email, this letter was emailed to Mr. Fayer at 11:57 a.m.

24  PDT on July 12, 2016.

25       19.    Attached hereto as **Exhibit 19** are true and correct copies of my July

26  15, 2016 cover letter to Mr. Fayer, along with my July 15, 2016 letter to Hillair

27  Capital Management LLC, Hillair Capital Investments LP and Haven Beauty, Inc.,

28  with a cc to Mr. Fayer, with the subject line "Demand That You Cease and Desist

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1   Infringement of A&F Trademarks and Demand for Indemnification." According to

2   the cover email, both letters was emailed to Mr. Fayer at 4:14 p.m. PDT on July 15,

3   2016.

4        20.    Attached hereto as **Exhibit 20** are true and correct copies of

5   (a) Mr. Fayer's July 18, 2016 letter to me, with the subject line "Response to July

6   15, 2016 Letter Re A&F Trademarks," and (b) the July 18, 2016 letter from Charles

7   B. Witham, Esq. of the law firm Witham, Mahoney & Abbott, LLP, counsel for

8   Haven Beauty, to Susan M. Kayser, Esq of the law firm Jones Day, counsel for

9   Abercrombie & Fitch Trading Co., with the subject line "Response to Demand

10  Letter."

11       21.    Attached hereto as **Exhibit 21** is a true and correct copy of my July 19,

12  2016 letter to Mr. Fayer, with the subject line *Haven Beauty, Inc. v. Kim*

13  *Kardashian, et al.*, USDC Case No. CV 16-01307 JVS (DFMx); *2Die4Kourt, et al.*

14  *v. Hillair Capital Management, LLC, et al.* USDC Case No. CV 16-01304 JVS

15  (DFMx).

16       22.    Attached hereto as **Exhibit 22** is a true and correct copy of Mr. Fayer's

17  July 20, 2016 letter to me, with the subject line *Haven Beauty, Inc. v. Kim*

18  *Kardashian et al. (CD Case No. CV 16-0 1307).*

19       23.    Attached hereto as **Exhibit 38** is a true and correct copy of the

20  complaint filed on March 21, 2016, in the Los Angeles County Superior Court

21  styled, *Hillair Capital Management LLC, et al vs. Kim Kardashian, et al*, LASC

22  Case No. BC614374.

23       24.    Attached hereto as **Exhibit 39** is a true and correct copy of an email

24  exchange between Jeanene Morgan of Haven Beauty and me, on April 30, 2015 and

25  May 1, 2015.

26

27

28

25.    Attached hereto as **Exhibit 40** is a true and correct copy of the May 11, 2015 email from Jeanene Morgan of Haven Beauty to me.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 21, 2016, at Santa Monica, California.

Michael J. Kump

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

## Table Of Exhibits To Declarations

| EXHIBIT NO.: | DESCRIPTION: | Authenticating Declaration - Paragraph No.: |
|---|---|---|
| 1 | Licensing Agreement dated May 9, 2012 | Wilson Decl. ¶ 5 |
| 2 | Mike Kump's February 26, 2016 letter to Hillair Capital Management, LLC, with the subject line "Notice of Breaches of Licensing Agreement dated May 9, 2012." | Kump Decl. ¶ 2 |
| 3 | Gregory Fayer's March 21, 2016 letter to M. Kump, with the subject line "Hillair Capital Management LLC v. Kim Kardashian et al. (LASC Case No. BC614374)." | Kump Decl. ¶ 3 |
| 4 | Gregory Fayer's March 31, 2016 letter to Mike Kump, with the subject line "Licensing Agreement Dated May 9, 2012." | Kump Decl. ¶ 4 |
| 5 | Mike Kump's April 1, 2016 letter to Gregory Fayer, with the subject line "Licensing Agreement dated May 9, 2012." | Kump Decl. ¶ 5 |
| 6 | Redacted copy of the Kardashians' Demand for Arbitration filed with JAMS. | Kump Decl. ¶ 6 |
| 7 | Gregory Fayer's April 15, 2016 letter to Mike Kump, with the subject line "Licensing Agreement dated May 9, 2012." | Kump Decl. ¶ 7 |
| 8 | Mike Kump's June 22, 2016 cover letter to Gregory Fayer, along with Mike Kump's June 22, 2016 letter to Hillair Capital Management LLC, Hillair Capital Investments LP and Haven Beauty, Inc., with a cc to Gregory Fayer, with the subject line "Notice of Failure to Make Timely Payments Due Under the Licensing Agreement dated May 9, 2012." | Kump Decl. ¶ 8 |
| 9 | Mike Kump;s June 24, 2016 cover letter to Gregory Fayer, along with Mike Kump's June 24, 2016 letter to Hillair Capital Management LLC, Hillair Capital Investments LP and Haven Beauty, Inc., with a cc to Gregory Fayer, with the subject line "Notice of Breach of License Agreement and Demand for Cure." | Kump Decl. ¶ 9 |
| 10 | The Court's order entered on June 30, 2016 in the state court action granting the Kardashians' motion to compel arbitration and stay all proceedings | Kump Decl. ¶ 10 |
| 11 | Mike Kump's July 7, 2016 letter to Hillair Capital Management LLC, Hillair Capital Investments LP and Haven Beauty, Inc., with a cc to Gregory Fayer, with the subject line "Demand that You Immediately Cease and Desist." | Kump Decl. ¶ 11 |

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

| 12 | Gregory Fayer's July 7, 2016 letter to Mike Kump, with the subject line "Response to June 22, 2016 Notice of Failure to Make Timely Payments." | Kump Decl. ¶ 12 |
|---|---|---|
| 13 | Mike Kump's July 8, 2016 email to Gregory Fayer at 12:08 a.m. PDT, along with Mike Kump's July 8, 2016 cover letter to Gregory Fayer, and Mike Kumps July 8, 2016 letter to Hillair Capital Management LLC, Hillair Capital Investments LP and Haven Beauty, Inc., with a cc to Gregory Fayer, with the subject line "Notice of Termination of the Licensing Agreement dated May 9, 2012, Effective Immediately. | Kump Decl. ¶ 13 |
| 14 | Mike Kump's July 8, 2016 letter to Gregory Fayer, with the subject line "Demand that Hillair and Haven, and the Individuals Directing Their Activities, Cease and Desist From Any Further Violations of the Kardashians' Rights." | Kump Decl. ¶ 14 |
| 15 | Gregory Fayer's July 8, 2016 letter to Mike Kump, with the subject line "Response to M. Kump July 7, 2016 Cease and Desist Letter." | Kump Decl. ¶ 15 |
| 16 | Gregory Fayer's July 8, 2016 letter to Mike Kump, with the subject line "Response to M. Kump July 8, 2016 Notice of Termination and Cease and Desist." | Kump Decl. ¶ 16 |
| 17 | Gregory Fayer's July 11, 2016 letter to Mike Kump, with the subject line "Notice of Breach and Tortious Conduct." | Kump Decl. ¶ 17 |
| 18 | Mike Kump's July 12, 2016 letter to Gregory Fayer, with the subject line "Hillair Capital and Haven Beauty." | Kump Decl. ¶ 18 |
| 19 | Mike Kump's July 15, 2016 cover letter to Gregory Fayer, along with Mike Kump's July 15, 2016 letter to Hillair Capital Management LLC, Hillair Capital Investments LP and Haven Beauty, Inc., with a cc to Gregory Fayer, with the subject line "Demand That You Cease and Desist Infringement of A&F Trademarks and Demand for Indemnification." | Kump Decl. ¶ 19 |
| 20 | (a) Gregory Fayer's July 18, 2016 letter to Mike Kump, with the subject line "Response to July 15, 2016 Letter Re A&F Trademarks," and (b) the July 18, 2016 letter from Charles B. Witham, Esq. of the law firm Witham, Mahoney & Abbott, LLP, counsel for Haven Beauty, to Susan M. Kayser, Esq of the law firm Jones Day, counsel for Abercrombie & Fitch Trading Co., with the subject line "Response to Demand Letter." | Kump Decl. ¶ 20 |
| 21 | Mike Kump's July 19, 2016 letter to Gregory Fayer, with the subject line *Haven Beauty, Inc. v. Kim Kardashian, et al.*, USDC Case No. CV 16-01307 JVS (DFMx); *2Die4Kourt, et al. v. Hillair Capital Management, LLC, et al.* USDC Case No. CV 16-01304 JVS (DFMx). | Kump Decl. ¶ 21 |

Kinsella Weitzman Iser Kump & Aldisert llp
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

| | | |
|---|---|---|
| 22 | Gregory Fayer's July 20, 2016 letter to Mike Kump, with the subject line *Haven Beauty, Inc. v. Kim Kardashian et al. (CD Case No. CV 16-0 1307)* | Kump Decl. ¶ 22 |
| 23 | The standard character mark KARDASHIAN BEAUTY, USPTO Reg. No. 4,909,148. | Wilson Decl. ¶14 |
| 24 | The standard character mark KARDASHIAN, USPTO Reg. No. 4,509,292. | Wilson Decl. ¶ 15 |
| 25 | The standard character mark KOURTNEY KARDASHIAN, USPTO Reg. No. 4,516,081 | Wilson Decl. ¶ 16 |
| 26 | The standard character mark KIM KARDASHIAN, USPTO Reg. No. 3,919,997 | Wilson Decl. ¶ 17 |
| 27 | The standard character mark KHLOE KARDASHIAN, USPTO Reg. No. 4,516,080 | Wilson Decl. ¶ 18 |
| 28 | A term sheet regarding "Newco Beauty Company Offering of New Equity" | Wilson Decl. ¶ 25 |
| 29 | Jeanene Morgan's May 11, 2015 Email to Mike Kump | Wilson Decl. ¶ 26 |
| 30 | August, 2014 Settlement Agreement between Hillair and the Kardashians | Wilson Decl. ¶ 27 |
| 31 | Redacted copy of May 12, 2016 Email from Jeanene Morgan to Mike Kump | Wilson Decl. ¶ 44 |
| 32 | Internet articles discussing the launch of the "Fierce" line of Kardashian Beauty products. | Wilson Decl. ¶ 57 |
| 33 | Hillair and Haven Beauty announcements re new product launch through the Kardashian Beauty website (kbeauty.com), and on the official pages of Kardashian Beauty on Instagram, Facebook and Twitter. | Wilson Decl. ¶ 58 |
| 34 | Instagram posts, photographs, and an article evidencing the promotion of the unauthorized Kardashian Beauty products at "Beautycon." | Wilson Decl. ¶ 59 |
| 35 | July 8, 2016 press release concerning YouCam Makeup App. | Wilson Decl. ¶ 62 |
| 36 | Article entitled "Kardashian Beauty's Fierce Makeup Launch Keeps Up With the Famous Family," published in Women's Wear Daily (WWD) on July 11, 2016 | Wilson Decl. ¶ 67 |
| 37 | July 14, 2016 cease and desist letter from counsel for Abercrombie & Fitch to Jennifer Craft and Charles B. Witham re "Infringement of A&F's Fierce Trademark". | Wilson Decl. ¶ 68 |
| 38 | The complaint filed on March 21, 2016, in the Los Angeles County Superior Court styled, *Hillair Capital Management LLC, et al vs. Kim Kardashian, et al*, LASC Case No. BC614374. | Kump Decl. ¶23 |

| 39 | Email exchange between Jeanene Morgan of Haven Beauty and me, on April 30, 2015 and May 1, 2015. | Kump Decl. ¶ 24 |
| 40 | May 11, 2015 email from Jeanene Morgan of Haven Beauty to Mike Kump | Kump Decl. ¶ 25 |

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850